(March 16, 1915.)

## NAMPA & MERIDIAN IRRIGATION DISTRICT, Appellant, v. W. M. BRIGGS, Respondent.

### [147 Pac. 75.]

IRRIGATION AND WATER RIGHTS—OWNERSHIP—ANNUAL MAINTENANCE—CONSIDERATION EXPRESSED IN DEED—TITLE—PURCHASE—CONSTITUTIONAL LAW—IRRIGATION DISTRICT—PUBLIC SERVICE CORPORATION—COMMON CARRIER—MUTUAL CO-OPERATIVE COMPANY—PREFERENTIAL RIGHT—POWER OF EMINENT DOMAIN—RECITAL IN DEEDS—USE OF WATER FOR IRRIGATION—POSSESSION— NOTICE—TENDER — DEPOSIT IN COURT—JUDGMENT.

1.   The facts in this case considered and held to not support the contention that appellant and respondent are co-owners of the irrigation system; that appellant's ownership of said system is established by the evidence, and that respondent is the owner of a right to two cubic feet of water per second of time to be delivered through the ditches and canals thereof.

2.   The deeds executed by the predecessors of appellant and respondent examined, and it is found that the agreement to pay the sum of $12 per annum on the water right described in each of said deeds as an assessment for the management and maintenance of said irrigation system is a part of the consideration upon which said deeds are based.

3.   Appellant became the owner of the irrigation system in question after contracts had been entered into whereby respondent's predecessor and his successors in interest were to enjoy the use of two cubic feet of water per second of time and were to pay $24 per year toward the upkeep of the irrigation system. It was optional with the appellant to make the purchase or not. Having elected to purchase, it could acquire no greater interest than its vendor had and must take its title burdened with said contracts. Having purchased the system it might have acquired respondent's property right by purchase or condemnation and might have brought him into the district upon equal terms with its members, but it did not do so, and his interest granted by these contracts is property that may not be confiscated, or taken, without payment of just compensation.

4.   The water right contracts entered into between the predecessors in interest of the appellant and respondent were so entered into before the adoption of the constitution of Idaho. There was noth-

ing in the law of the territory of Idaho prohibiting such contracts, and sec. 10, art. 1 of the federal constitution prohibits states from passing laws impairing the obligation of contracts.

5.  The appellant, an irrigation district created under the laws of the state of Idaho, is not a public service corporation in the sense that it is a common carrier, to any other or greater extent than the term implies when applied to its own membership, and when confined to the business of carrying water for the irrigation of lands within its own district.  It is a mutual, co-operative corporation, organized not for profit, engaged in distributing water to its members for use upon lands within its district.

6.  The fact that such a corporation as appellant is may exercise the power of eminent domain does not, of necessity, constitute it a public service corporation in the sense that the public may exact any service from it.

7.  It appears from the evidence and the stipulation of the parties that in deeds by which title to the irrigation system was granted to certain of appellant's predecessors in interest and through whom it deraigned title, there were reserved certain water rights, and that among said rights so reserved were those now claimed by respondent; also that at the time appellant purchased, and for a long time prior thereto, respondent was in possession of his land and was using water thereon from the canal pursuant to the stipulation in his deeds.  *Held,* that these are facts, knowledge of which ought to put a prudent man on inquiry, which would have readily disclosed the true condition of respondent's claim, whether his deeds were so acknowledged as to entitle them to go of record or not.

8.  The respondent, before the commencement of the action, tendered to the appellant and deposited in court $120, in which sum he is indebted to appellant; the appellant is entitled to judgment against the respondent in said amount, and the respondent is entitled to judgment against the appellant, under sec. 4909, Rev. Codes, for the amount of his costs incurred in the district court.

APPEAL from the District Court of the Third Judicial District for Ada County.  Hon. Carl A. Davis, Judge.

Action to recover from defendant his *pro rata* share for the management, maintenance and repairs of appellant's canal system.  Judgment for defendant.  *Modified.*

H. E. McElroy, for Appellant.

Deeds of this character, to a part only of the water carried by the canal, clearly bring the grantee and the owners of

the remainder of the water carried by the canal into the relation of tenants in common in water rights.    (*Frost v. Alturas Water Co.,* 11 Ida. 294, 81 Pac. 996.)

Respondent relies upon *Jackson v. Indian Creek Reservoir etc. Co.,* 16 Ida. 430, 101 Pac. 814, and *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81. In those cases the court was only declaring the law in relation to contracts which attempted to fix charges for the use of water. The owners of water rights under such deeds as these in controversy are tenants in common with this appellant in this canal system, and we are no more under obligation to maintain this canal system for their benefit than that they should maintain it for us. It is merely a question of prorating the expense. This court has passed upon cases of this character in which the titles of grantees of undivided interest in water rights were respected and recognized in the following cases: *Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993; *Idaho Fruit Land Co. v. Great Western Beet Sugar Co.,* 18 Ida. 1, 107 Pac. 989.

The annual maintenance is a duty which rests upon the owner of a water right as an incident of such ownership; it is not part of the title, neither can it be the subject of a covenant running with the title to the property; agreements in relation thereto only bind the parties to such agreements, and cannot affect the title to other and different rights from the same canal system.

The Central Canal & Land Co. could and possibly did impose that obligation on itself; but could not make such an obligation forever follow the title to water rights owned by the public and in regard to which the canal owner is "but an agent of the public for the distribution of such waters to such members of the public as may apply for them and pay him the legal charge for the service rendered by him." (*Leavitt v. Lassen Irr. Co.,* 157 Cal. 82, 106 Pac. 404, 29 L. R. A., N. S., 213.)

This same question of preferential rights was passed upon by the circuit court of appeals in *Boise City, Irr. & Land Co. v. Clark et al.,* 131 Fed. 415, 65 C. C. A. 399, where the court

held directly that the Boise City Irr. & Land Co., our predecessor in interest, could not lawfully fix a rate required to be charged to the users of water to pay for the maintenance properly chargeable to this land. If our predecessors in interest could not lawfully charge up their maintenance for the Gess tract to the other lands to which they supplied water, as the court held in that case, much less can this district do so, limited as it is by the law regulating irrigation districts. The Boise City Irrigation & Land Co. was a private corporation; this district is a public one. In *Daly v. Josslyn,* 7 Ida. 657, 65 Pac. 442, the court held that specific performance of a contract in relation to water rights could not be decreed. In other words, the contract was a personal one, and no person could be held unless he became a party thereto.

The law is well settled that the owners of water rights carried through the same ditch are legally liable to contribute *pro rata* to the maintenance thereof. (Long on Water Rights, sec. 75. *Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993; *Shelby v. Farmers' etc. Ditch Co.,* 10 Ida. 723, 80 Pac. 222.)

"Water appropriated for distribution and sale is, *ipso facto,* devoted to a public use, which is inconsistent with the right of the person so appropriating it to exercise the same control over it that he might have exercised if he had never so appropriated." (*McCrary v. Beaudry,* 67 Cal. 120, 7 Pac. 264.)

The charge for the use of the water when fixed under sec. 6, art. 15, of the constitution, is subject to modification from time to time. (*Green v. Jones,* 22 Ida. 560, 126 Pac. 1051.)

The amount which the canal owner may lawfully charge for such use was as definitely fixed by statute prior to the constitution as by the constitution itself. Sec. 6, art. 15, merely authorizes the legislature to provide a method of determining the charge; and, as stated in sec. 2, art. 15, the franchise can only be exercised "by authority of and in the manner prescribed by law."

Wood & Driscoll and Martin & Martin, for Respondent.

This case is controlled absolutely by the decisions of this court in *Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81; *Jackson v. Indian Creek Reservoir etc.*, 16 Ida. 430, 101 Pac. 814, and *Nampa & Meridian Irr. Dist. v. Gess*, 17 Ida. 552, 106 Pac. 994.

In *Knowles v. New Sweden Irr. Dist.* the deed and agreement under which the plaintiff claimed is set forth in part in the opinion of the court, and in the important features is nearly identical with the deeds and agreements in controversy.

The deed construed in *Jackson v. Indian Creek Reservoir, etc.*, appears to be practically a duplicate of the deeds in controversy.

Since the decision and application for rehearing in this case, this court has decided the case of *Riverside Irr. Dist v. Black*, 25 Ida. 98, 136 Pac. 611. In the latter case rights under a contract have been sustained where water was reserved with a right to carry the same through a fixed portion of a canal system; and, while the court under the contract sustained the trial court in prorating the cost, it concluded the opinion as follows: "It is clear to us, on the other hand, that this reserved water cannot be subject to any charge other or greater than that stipulated and provided for in the deed which reserved that right"; citing in support thereof all of the cases upon which we relied on the original argument to sustain the validity of the contract and reservations in the various deeds through which the district acquired title to this canal property.

In connection with the status of irrigation canals and irrigation districts in this state we call attention to the former decisions of this court in *Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134; *City of Nampa v. Nampa & Meridian Irr. Dist.*, 19 Ida. 787, 115 Pac. 979.

MORGAN, J.—This case was before the court at the April term, 1913, and a decision was filed herein on July 16, 1913. Upon a petition therefor, a rehearing was granted and the case has been reargued and again submitted for decision.

This action was commenced by Nampa & Meridian Irrigation District to collect from the respondent, Briggs, his *pro rata* share of the expenses necessarily incurred for the repair and maintenance of the ditches and canals of the irrigation system owned and controlled by said district. It appears that said district has delivered water to the respondent during the years 1906, 1907, 1908 and 1909 and that respondent has failed, neglected and refused to pay his *pro rata* share of the expense of the maintenance of the canal system during said years. The respondent alleges as a defense that he is the owner of the water right for his land which is irrigated from said system, and that he purchased the same from the appellant's predecessor, the Central Canal & Land Company, paying therefor the sum of $1280, and that he received two deeds, each conveying one water right consisting of one cubic foot of water per second of time, and that by stipulation in said deeds he is only required to maintain the ditch or lateral which conveys the water from the said company's main canal to his land, and that he has no interest or part in said main canal, which belongs to the appellant, and that under his deeds he is released from ever contributing toward the repair or maintenance of the main canal more than $12 per annum for each cubic foot of water, which amount, for the years 1906, 1907, 1908, 1909 and 1910, he has heretofore tendered to appellant and tenders into court with his answer.

The trial court, after hearing, made findings of fact and entered judgment in favor of respondent, holding that the provision contained in said deeds whereby the predecessor in interest of the respondent agreed to pay $12 per annum toward the management and maintenance of said canal system for each water right of one cubic foot of water per second of time, was valid and binding upon the appellant, being the successor in interest to said Central Canal & Land Company in said canal and certain water right contracts. The appeal is from the judgment.

The main question is whether the appellant irrigation district has a right to recover from the respondent his *pro rata*

share per annum of the expense of the management and maintenance of the said canal system, or whether appellant is bound by the stipulation in said deeds which required the respondent to pay but $12 for the delivery of a cubic foot of water per second of time. In other words, whether an irrigation district, which is the successor in interest to a canal company that acquired water for sale, rental and distribution, is bound by the agreements of such company limiting the amount which one or more of its grantees, who hold by grants prior to the transfer to the irrigation district, shall pay by way of maintenance upon the system.

The following facts appear from the record: One Wm. B. Morris, upon August 7, 1877, recorded his water location notice whereby he claimed sufficient water from Boise river to fill a ditch or canal eight feet wide at the bottom and twelve feet wide at the top and three feet in perpendicular depth, said water to be diverted from the south side of Boise river. Said water was located for milling, mining and agricultural "and for purposes of irrigating and subjecting waste and desert land to settlement, use and cultivation." Thereafter Morris died about the year 1880 and his title in and to said water right and ditches descended to and was decreed by the probate court of Ada county to Lavina T. Morris and William H. Ridenbaugh. Thereafter on August 20, 1888, said Ridenbaugh located and claimed 30,000 inches of the water of Boise river, measured under a four-inch pressure, which location was made as an additional one to the one made by said Morris, above mentioned, which water was to be used for irrigation, domestic and mechanical purposes and on desert lands, below said point of diversion. Thereafter on October 1, 1888, said Ridenbaugh and Morris sold and conveyed, by warranty deed, the two water rights above mentioned, excepting and reserving therefrom certain water rights therein mentioned, to the Central Canal & Land Company, a corporation organized for the purpose of irrigating and reclaiming desert lands by the sale, rental or distribution of water. On May 29, 1890, said Central Canal & Land Company conveyed, by warranty deed, to George W.

Morrill said water rights and ditches, excepting and reserving therefrom certain water rights. Said Morrill and wife conveyed said canals and ditches on August 6, 1890, to the Boise & Nampa Irrigation Land & Lumber Company, a corporation organized under the laws of the territory of Idaho, for the purpose of irrigating and reclaiming arid and desert land and for selling, leasing and renting water for any and every purpose.

It appears from the record that thereafter said water rights and ditches were sold at least twice at sheriff's sale; once on mortgage foreclosure, and once on execution, but no question is raised on this appeal in regard to the effect of said sales. Said property was bid in on the foreclosure and execution sales by one Geo. B. Forman in December, 1896, and the sheriff's deeds were thereafter executed to said purchaser, conveying to him said property. Thereafter and on April 20, 1899, said Forman sold and conveyed said canal system to the Boise City Irrigation Land & Lumber Company, a corporation organized under the laws of the state of New Jersey. Thereafter, in 1905, the Boise City Irrigation Land & Lumber Company conveyed said water rights and canals to the appellant herein, the Nampa & Meridian Irrigation District, it being an irrigation district organized under the laws of this state.

From the foregoing it appears that said water was located and acquired by its successive owners for sale, rental and distribution, and that said appellant corporation is a co-operative company organized for the purpose of managing and conducting said system for the irrigation of lands within said district. Also it appears from the record that it costs many thousands of dollars each year for the maintenance of said system and that such sum is raised by prorating the expense among the water-users in said district according to law. The record also shows that the appellant, the irrigation district, in the year 1909 expended at least $12,000 in repairing a break in its canal, and that in order to render the canal safe for use it was compelled to cement a portion of it, which work was in progress at the time this action was commenced, and

that at said time said repairs had cost the sum of $27,000. That the cost of maintenance was such that the assessment made for that purpose was $1.00 per miner's inch per annum for water delivered to the users. Aside from this, all users who did not own private water rights have been assessed annually $1.25 per miner's inch of water received by each, for the purpose of paying the interest on the bonded indebtedness of the district, which indebtedness arose from the purchase of the water rights and canals owned by said district.

It further appears that the Central Canal & Land Company, predecessor in interest to the appellant, issued certain water right certificates while it was the owner of the property, which contained, among others, the following provision: "The said Central Canal & Land Company upon the surrender of this certificate properly signed and indorsed, promise and agree to execute a good and sufficient deed in manner and form as now adopted by said Company." It further appears that while said irrigating system was the property of said Central Canal & Land Company water right certificates were, for a valuable consideration, issued to the predecessor in interest of the respondent, covering two water rights of one cubic foot per second of time, approximately fifty miner's inches, each. Water right deeds were thereafter issued by said Central Canal & Land Company to Frank De Cloedt, predecessor in interest of and grantor of respondent, one dated June 15, 1889, conveying one cubic foot of water per second of time, and the other dated June 10, 1891, conveying a like amount of water to De Cloedt, pursuant to the water right certificates above mentioned.

It is maintained by the appellant that the respondent, owing to the foregoing facts and the recitals in said deeds, is the owner of an interest in said canal system and that the appellant and respondent are co-owners thereof.

An examination of the deeds in question and consideration of the facts above stated do not bear out this contention, but, upon the contrary, lead to the conclusion that it was not the intention of the Central Canal & Land Company and De Cloedt to own the property in common, and that it was their

intention that De Cloedt should have a perpetual right to two cubic feet of water per second of time to be delivered through the ditches and canals of the said company.

It is recited in each of said deeds: "That in consideration of the stipulations herein contained and the payments to be made as hereinafter specified, and of the sum of $640 in hand paid by the party of the second part, the receipt of which is hereby acknowledged by the said first party, the said first party has granted, bargained, sold and conveyed and by these presents does hereby grant, bargain, sell, convey and confirm unto the said second party, his heirs or assigns, one water right to the use of water flowing through the canal of said first party. . . . . "

The first numbered paragraph of said deeds provides that the first party shall keep and maintain said canal in good order and condition and in case of accident to, or breach in, or damage to the same, to repair it.

The second paragraph provides that the second party, his heirs, executors, administrators and assigns shall pay said first party, its successor or assigns, on or before the first day of May in each year, the sum of $12 on each water right as assessment for the management and maintenance of said canal for the ensuing year. It also provides that the first party may establish and enforce such rules, by-laws and regulations and provide and declare such penalties and forfeitures as it may deem necessary and expedient for the purpose of enforcing and collecting said assessments.

By construing the said second paragraph and the portion of the deeds relative to the consideration together it will be readily seen that the stipulation limiting the amount to be paid toward the up-keep of the canal is a part of the consideration for the contract, for the payment of $12 a year upon each water right is the only payment which remained for the second party to make. The assessment of $12 a year upon each water right must be the payments referred to in the deeds, where it is said: "In consideration of the stipulations herein contained and the payments to be made as hereinafter specified."

The third paragraph specifies the particular tracts of land upon which the water shall be used for irrigation and that it shall be used upon no other land and for no other purposes, other than domestic purposes; that it shall be used only during the irrigating season and that under no circumstances shall said water or any portion thereof be used for mining, milling, mechanical power "or for any other purpose not directly connected with or incidental to the purposes first herein mentioned."

The fourth paragraph provides that the second party, his heirs or assigns, shall not permit said water or any portion thereof, to be furnished as aforesaid, to run to waste, and that should any of it run to waste the first party shall have the right to go upon the lands of the second party and to construct and maintain canals and ditches to convey such water to any other point the first party may desire. It also provides that as soon as sufficient water has been used for the purposes allowed, the second party shall notify the first party that a portion or all of said water may be shut off, and shall give timely notice when the water is needed again.

The fifth paragraph relates to the manner of the delivery of said water by the first party into the lateral ditch or canal provided by the second party; and the sixth and seventh paragraphs provide that the first party shall not be liable for damage for shortage of water under certain circumstances therein stated, but that said first party may establish and enforce such rules and regulations as it may deem necessary and expedient to protect the rights of water users.

In the eighth paragraph, the second party waives all damages by reason of leakage, seepage, overflow, etc., and grants a right of way upon, across and over his lands for the purpose of excavating, constructing and maintaining the canals and laterals of the first party, and grants the right of ingress and egress upon said lands to construct, excavate, operate and maintain such canals and laterals and to keep them in repair.

The ninth paragraph provides that the first party shall deliver said water at such point or points along the line of

its canal as it may determine to be the most practicable, and it shall have the right to regulate the supply of said water and that the headgates, boxes, flumes, weirs or other arrangements through which the water shall be drawn from said canal shall be placed in position by the first party, but at the cost and expense of the second party and other parties jointly who may be receiving water at the same place with the second party.

The tenth paragraph fixes the rights of the parties in the event of the failure of the second party to comply with the stipulations in the deeds to be by him kept and performed.

In the deed dated June 10, 1891, it is recited:

"This deed is given upon surrender & cancellation of ½ water right certificate No. 6 and 7 issued by The Central Canal & Land Co. on the 4th day of January, 1890, and the land to be irrigated under this deed is a part of the Nine Hundred & twenty Five acres Reserved by Central Canal & Land Co. in Deed made to George W. Morrill."

The deeds are executed by both parties, and it may be said that if it was their intention to be cotenants in the system or that the second party should be a co-owner with the party of the first part in its rights of way, canals, ditches or other property, or if he was to have anything else than a perpetual right to a specified quantity of water to be used for a specified purpose upon specified lands and to have the same delivered through the irrigation system of the first party upon payment of $12 per annum for each cubic foot of water per second of time toward the maintenance of the system, nothing contained in said deed or the record so indicates.

*Frost v. Alturas Water Co.,* 11 Ida. 294, 81 Pac. 996, is cited by appellant in support of the theory that the parties to this action are tenants in common of the water carried by the canal in question. The case is not in point. In the *Frost v. Alturas Water Company* case a number of plaintiffs, appropriators of water from a stream, joined in a suit against a number of other appropriators of water from said stream for the purpose of procuring a decree quieting the title of the respective parties to the water of said stream and its trib-

utaries. While the court in that case quoted from Farnham on Water and Water Rights, vol. 3, sec. 687b, to the effect that the relation of prior and subsequent appropriators of water of a stream is that of tenants in common, the respective rights of whom a court of equity has the power to ascertain and determine, and to fix the time at which each may have the use of the water, in this case the relation of the parties has been fixed by the contract of their predecessors, and the question presented for determination is as to the validity of this contract and, if found to be valid, its effect.

The case at bar, in principle, resembles that of *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81, as that case was at first presented to this court and decided and as the decision thereof stood before rehearing. In that case a deed was given by the Great Western Canal Construction Company, the predecessor in interest of New Sweden Irrigation District, the respondent, to one Scott, the predecessor in interest of Knowles, the appellant. The court in that case clearly analyzed the situation as follows:

"It seems to us that this question may be simplified by briefly stating some fundamental principles that must necessarily arise in the consideration of this matter and upon which its correct determination must necessarily rest. In the first place, appellant's predecessor in interest, Scott, had a clear and undisputed right to contract with the Great Western Canal Construction Company for the purchase of a water right sufficient to irrigate his tract of land. This he did, and for that right he paid $1,800. Under it he and his successors in interest were entitled to the perpetual use of water sufficient to irrigate his tract of land, not exceeding 250 inches per second, upon paying the fixed and stipulated price of $1 per acre as rental therefor. Under the laws of this state a water right is real estate. (Sec. 2825, Rev. Stats.; *Ada Co. etc. Co. v. Farmers' etc. Co.,* 5 Ida. 799, 51 Pac. 990, 40 L. R. A. 485; *McGinnis v. Stanfield,* 6 Ida. 372, 55 Pac. 1020; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19.) The conveyance of this property, having been made a matter of record, became notice to subsequent purchasers from the Great Western

Canal Construction Company. The respondent, New Sweden Irrigation District, has a right to organize itself into a *quasi-*municipal corporation for the purpose of purchasing, acquiring or constructing canals, ditches, water rights and a canal system. This it had done. It had a right to purchase the Great Western Canal system, and the Great Western Canal Construction Company had a right to sell this property. The irrigation district having the right and capacity to purchase, and the canal company having the property and the right to dispose of the same, the latter could lawfully sell to the irrigation district, which it has done. The canal company could not sell any greater title than it possessed, and when the irrigation district purchased, it could neither purchase nor acquire any greater title or interest than its grantor owned and possessed. When it purchased this canal system, it purchased it subject to and burdened with the rights and equities of the appellant's grantor.''

The court further held that the lands of the appellant could not be assessed for the purchase of the irrigation system, since he already owned his water right, without first condemning his right, or otherwise acquiring it, saying: ''Now, it is clear to us that for the purchase of this system respondent could not legally and lawfully assess appellant's property until such time as it had either purchased or acquired his water right and privileges and reduced him to a common level, and placed him on a common footing with the other land owners and water consumers in the district. To assess appellant for the purchase of a water right and canal system upon the theory that his lands were to be benefited thereby on account of receiving water from such system is wholly unjustifiable, where the appellant was already the owner of sufficient interest, title and claim in the water right and canal system for his own purposes, and where the purchase was not to be received by him either in whole or part, but was to be received wholly by a third party. If, on the other hand, his water right had been purchased by the irrigation district or condemned by it, then it would have been emi-

nently proper to assess his lands proportionately according to the benefits received for the purchase or condemnation price. In this connection it must be borne in mind that there is a wide and well-defined distinction between the rights and appurtenances appellant had acquired under his grantor's contract with the Great Western Canal Construction Company and the rights that he acquired under sec. 4 of art. 15 of the constitution, which constitutional provision works a perpetual dedication of the waters to the lands on which they have been once applied upon payment of the annual rental charges therefor. The latter right would remain as a matter of law, even though the district had condemned appellant's property rights acquired under his grantor's contract with the Great Western Canal Construction Company. The only additional right and privilege that this contract gave the purchaser over any other water-user is that of receiving his water annually at the fixed and stipulated rental of one dollar per acre. On the contrary, a water consumer who had not purchased such a contract would be liable to pay such annual water rates as might be established from time to time in conformity with the statute. But under this contract neither the canal company nor its successors in interest could ever raise the rate as against appellant.''

The court further decided in discussing the statute providing for the formation of irrigation districts, as follows:

''These provisions of the statute were evidently enacted for the very purpose of enabling the district to acquire all the water rights and privileges held and owned by individuals, companies or corporations within the territorial jurisdiction of the district. It was contemplated by the legislature that districts would be formed wherein individuals or small companies might own their own water rights and ditches for their private use, and it must have been intended that if the district desired to acquire such rights and assess the property on which such waters were being applied, it might do so by purchasing or condemning the water rights and bringing their owners into the community of interest with the other land owners in the district, and thereby place them on an equal

footing with all others against whom assessments might be levied and collected."

Upon rehearing an entirely different phase of the case was presented to the court and it was held that the action could not be maintained, because it was in the nature of a collateral attack upon a judgment of the district court in which all of the acts done by the respondent district, including the steps taken to form such district whereby the appellant's land had been included therein, had been confirmed.

In the case at bar the respondent appeared and protested against being taken into the district and his land was excluded, which facts, as above indicated, bring the case of *Knowles v. New Sweden Irrigation District,* as decided upon the first hearing, in point.

The case of *Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 554, 106 Pac. 994, is readily distinguished from the one at bar by the following quotation from the opinion in that case: "The only point in dispute or controversy here is the construction to be placed on this conveyance and the determination as to whether or not the 'free and perpetual use of the water for the purpose of irrigating said section of land' means that the canal shall be kept up and maintained by the grantors, and their assigns, and the water delivered to the defendant free of maintenance charge and actual cost of delivery, or whether it simply means that the defendant is the unqualified and absolute owner of a water right in the canal to the extent of the amount (conceded to be 500 inches) necessary for the irrigation of defendant's land without promise or covenant on the part of the grantor to perpetually keep the canal in repair and deliver the water to the owner of the land." In this case no such question arises, for it is expressed in the deeds here under consideration that the grantor shall keep up and maintain the system and the grantee shall pay $12 for each cubic foot of water per second of time toward the maintenance.

Said *Nampa & Meridian Irr. Dist. v. Gess* case is of value in considering the one at bar by reason of the following observation of the court in reaching that decision, showing the

application which the court made in that case of its decision in case of *Knowles v. New Sweden Irr. Dist., supra.* ''Counsel for the respondent cites the case of *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81, as supporting the contention that the property is bound by the contract. That case was where a ditch company had sold a water right and stipulated that the usual water rate should be the sum of $1.00 per acre. The court held that the company and its assigns would be bound by the contract and that the canal company cannot raise the rate to the consumer. That case, however, does not touch the point here involved and the contract was specific and definite as to the annual rate to be charged.''

The appellant says in his brief: ''The law is well settled that the owners of water rights carried through the same ditch are legally liable to contribute *pro rata* to the maintenance thereof,'' and cites, among other authorities, *Shelby v. Farmers' Co-operative Ditch Co.,* 10 Ida. 723, 80 Pac. 222.

No doubt this is true in cases wherein all parties are upon equal footing and there is no contract to the contrary. In said case it appears the Farmers' Co-operative Ditch Co. was successor in interest to the Idaho Irrigation and Colonization Co., from which last-named company the plaintiff, Shelby, bought his water right. Of said plaintiff and his right the court has occasion to say: ''He refused to deed his property to the corporation defendant and accept stock in lieu thereof, and it is unnecessary to say that the successor to appellant's grantor could impose no terms or conditions upon him, by any rules or regulations of the new company, that would in any manner interfere with the rights granted him in his deed.''

The case of *Jackson v. Indian Creek Irr. Co.,* 16 Ida. 430, 101 Pac. 814, seems to be in point with and decisive of this case. In that case the contract relied upon provided, among other things, as follows: ''The second party agrees to pay said company, its successors or assigns, on or before the first day of May, in each year, the sum of ten (10) cents per

miner's inch for all water used, or to be used during the season, as an assessment for the management and maintenance of said canal for the ensuing year. . . . ."

The trial court found that the agreement entered into between the plaintiff, Jackson, and the Orchard Irrigation Company, predecessor to the defendant, Indian Creek Irrigation Company, was void under the constitution of this state, in so far as it fixed the annual maintenance charge of ten cents per miner's inch; also that a reasonable maintenance charge for the use of said water was $1.75 an inch.

As a conclusion of law, the trial court found that the said agreement was unconstitutional in so far as it fixed the annual maintenance charge at ten cents a miner's inch.

In passing upon this feature of the case, the supreme court said: "This contract, it would seem, very clearly fixes and defines the respective rights of the parties. By it the company sells and conveys to the plaintiff the right to receive and use water from its reservoir and canals sufficient to irrigate certain land, and the plaintiff agrees to pay therefor an annual maintenance fee of ten cents. In case of shortage for any cause, the plaintiff agrees to receive under said contract only her *pro rata* share of water, and consents that the company shall furnish only her *pro rata* share of such water. The only point urged against the validity of this contract, and the only part of such contract held to be void by the trial court is that portion which fixes the maintenance charge, and it is in the light of this provision only that this court is called upon to determine the validity of such contract. That the parties to such contract had the capacity to contract it must be conceded, and if it was in their power to contract with reference to the maintenance charge, then so far as such contract is involved in this case, it must be held valid. The argument made against that provision in the contract which fixes the maintenance charge is based upon the provision of sec. 6, art. 15, of the constitution, which reads as follows: 'The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged

for the use of water sold, rented or distributed for any useful or beneficial purpose.'

"From this it is argued that the power to fix rates by contract is taken away and such power given solely to the legislature. Conceding, then, that the premises upon which such agreement is based are correct, still we find that the legislature of this state has by enactment authorized parties to contract with reference to the rate to be charged for furnishing water for irrigation purposes. Sec. 3288 of the Rev. Codes, among other things, provides:

" 'Any person, association or corporation which may contract to deliver a certain quantity of water to any party or parties, shall deliver the same to such party or parties. . . . . The amount to be paid by said party or parties for the delivery of said water, which amount may be fixed by contract, or may be as provided by law, is a first lien upon the land for the irrigation of which said water is furnished.'

"This statute clearly authorizes parties to contract with reference to delivery of water from a reservoir or canal and to fix and determine the amount to be charged as an annual maintenance fee therefor, and we believe clearly authorized the parties to make the contract involved in this case wherein or whereby a maintenance charge is fixed at ten cents per inch.''

It is true the contract in case of *Jackson v. Indian Creek Irr. Co.* was entered into after the adoption of the constitution of Idaho and after the enactment of the statute quoted from by the court in that case and hereinbefore recited, and in this case the contract was entered into before the adoption of the constitution and before the enactment of the statute which seems to constitute the greatest point of difference in the two cases, which circumstance would seem to be in favor of rather than against the respondent here. In case of *Jackson v. Indian Creek Irr. Co.*, the court says:

"So, in this case, if the statute did not expressly authorize the making of such contract, still, there being no constitutional or statutory inhibition against such contracts, the parties would have a right to make the same. This necessar-

ily leads to the inevitable conclusion that the contract involved in this case was valid and binding upon the parties thereto and their successors in interest.''

In the case at bar the contracts were made before the adoption of the constitution of Idaho, and we are unable to see wherein they violate any constitutional or statutory provision, had they been made subsequent thereto. Our attention has been directed to no law of this state, and we know of none, prohibiting the owner of a water right from selling a portion of the same and by the terms of his deed obligating himself and his successors in interest to keep the system in repair for a specified sum.

It is urged that to permit such a contract to stand is to recognize a preference right in favor of the grantee as against the subsequent purchasers from the grantor, and counsel for appellant urges that ''an insolvent canal owner in temporary possession of the property by a mere stroke of his pen so encumbers a canal with obligations of this character in favor of part of the water owners thereunder that the canal itself would, for all time, be not only without value, but a heavy liability in the hands of every purchaser at sheriff's sale as in this case.''

Even so, this is not the only form of property which may be by an impecunious owner encumbered by contracts which depreciate the value of its title, and purchasers, whether at sheriff's sale or not, should, and generally do, take into consideration the contracts with which the property is burdened, when fixing the purchase price to be paid for whatever equity their prospective predecessors in interest own.

It must be borne in mind that in this case the appellant became the owner of the irrigating system in question long after the contracts had been entered into whereby the respondent was to enjoy the use of two cubic feet of water per second of time and was to pay $24 per year toward the up-keep of the system. It was entirely optional with the appellant to make the purchase or not. Having elected to buy the property, it could acquire no greater interest than its vendor had and must take its title burdened with respondent's contracts. Had it

desired so to do and had it been necessary in order to carry out the purposes of its organization, it might have acquired respondent's property right in his contracts by purchase or condemnation and have brought him into the district upon equal terms with its members, but his interest, created by these contracts, is property that may not be confiscated, or taken, without payment of just compensation. (Rev. Codes, sec. 2422.)

There was nothing in the law, prior to the adoption of the constitution of Idaho, prohibiting the predecessors of appellant and respondent from entering into the contracts whereby the grantor agreed, for a valuable and fixed consideration, to keep the irrigation system in repair, and to construe our constitution and statutes, adopted since these contracts were entered into, so as to prohibit them is not only to do violence to the English language, but also to say our state has violated sec. 10, art. 1, of the federal constitution, which provides: "No state shall . . . . pass any . . . . law . . . . impairing the obligation of contracts. . . . ."

It has been earnestly urged that the appellant is a public service corporation; that it has acquired waters of the state which have been dedicated to public use; that in the delivery and distribution of the same it acts as a common carrier in that it may be required to deliver water, when it has a surplus beyond the needs of its members, to nonmembers who need it and can use it, upon payment of a just compensation for the service, and that the contracts under consideration grant to respondent a preferential right, result in discrimination against other water-users from the system and are contrary to public policy.

To proceed upon the theory that appellant is a public service corporation in the sense that it is a common carrier, and to follow it to its logical conclusion is to contradict the theory and disprove it. If it is such a public service corporation as here contended for it must, of course, act toward all members of the public impartially, and its acts in delivering water to its members, except when it may have a surplus beyond their needs, to the exclusion of others situated similarly, except in

the matter of membership, would be to grant to the members a preferential right which would result in discrimination against nonmembers and would be contrary to public policy.

The appellant is not a public service corporation in the sense that it is a common carrier to any other or greater extent than the term implies when applied to its own membership, and confined to the business of carrying water for the irrigation of lands within its own district. It is a mutual, co-operative corporation, organized not for profit, engaged in distributing water to its members for use upon lands within its district. (See Kinney on Irrigation and Water Rights, 2d ed., sec. 1480, and cases there cited.)

It is true, as has been suggested, that a corporation such as the appellant is may exercise the power of eminent domain, but it must be remembered that in Idaho the right to take private property for a public use, upon payment of just compensation therefor, does not, of necessity, constitute a corporation invested with that right a public service corporation in the sense that the public may exact any service from it. (*Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426.)

When appellant acquired the irrigation system the right owned by respondent had already been deeded away by its predecessor in interest, so that it took said system subject to outstanding rights and burdened with outstanding obligations. It is not contended that, when made, the contracts now complained of were inequitable or granted preferential rights or discriminated against anyone then situated as was the grantee in the original contracts or deeds, from appellant's predecessor. It was optional with appellant to purchase the system with its burdens or to not purchase it. Having purchased, it was optional to acquire the rights of respondent, granted by the deeds from appellant's predecessor, by purchase or condemnation, and to take his property into the irrigation district upon the common level, or to fulfill said contracts according to their terms. Had the respondent's rights under his deeds been acquired by appellant and his property been taken into the district, the contention that no

preferential right could be granted in his favor and against those situated similarly to him would be sound, but his rights were not acquired by appellant, his property was not taken into the district, the water-users who are members of the appellant corporation are not situated similarly to him, and the contention is not sound.

· Appellant urges that neither Morrill, one of its predecessors, nor itself had notice of the claim of respondent that his expense toward the up-keep of the canal system was limited to $12 a cubic foot of water per second of time, and particularly is that contention made against the right granted in the deed dated June 10, 1891, since Central Canal & Land Company, grantor named in said deed, had conveyed the irrigation system to Morrill prior to the date of the deed. Some objection is also made to the form of acknowledgments of the deeds from Central Canal & Land Company to respondent's predecessor, De Cloedt, and it is contended that, although placed of record, said deeds were not entitled to be recorded, and therefore did not impart constructive notice to appellant of respondent's claim.

At the trial of this case the parties stipulated, among other things: "That thereafter, by deed dated May 29, 1890, recorded in book 16 of deeds, at page 266, records of Ada county, the said Central Canal and Land Company conveyed the said canal property to one George W. Morrill, grantee.

"That said last named conveyance contained the following reservation as set forth in defendant's answer, 'save and except those certain water rights theretofore conveyed to the following persons, to wit, one water right for eighty acres of land conveyed by deed June 15, 1889, to Frank De Cloedt and recorded in book 15 of deeds, page 606, records of Ada county; also two water rights for one hundred and twenty acres of land in the aggregate conveyed by deed to S. De Cloedt, dated September 2, 1889, and recorded in book 14 of deeds, page 534, records of Ada county; also certain water right certificates now outstanding issued to C. J. Jones & Company, January 4, 1890, for 925 acres of land, that thereafter, by deed dated August 6, 1890, recorded September 9,

1890, book 16 of deeds, at page 270, records of Ada county, the said George W. Morrill and wife conveyed the same canal property to the Boise City and Nampa Irrigation Land & Lumber Company; that said deed contained the same reservation and exceptions as to outstanding water rights as the deed from the Central Canal and Land Company to George W. Morrill.''

The trial court found as a fact from the evidence, and properly so, we think, that the water right deed dated June 10, 1891, was issued to Frank De Cloedt in pursuance of the surrender and delivery, properly assigned, of a certificate or certificates equivalent to one of the water rights above mentioned, for one cubic foot of water per second of time for use upon 80 acres of land, and reserved as being outstanding and issued to C. J. Jones & Company.

The said George W. Morrill and the said Boise City and Nampa Irrigation Land & Lumber Company are among appellant's predecessors in interest and are parties through whom appellant deraigns title. In addition to this, at the time appellant purchased and for a long time prior thereto, respondent was in possession of his land and was using water thereon from the canal pursuant to the stipulation in his deeds. These are facts, knowledge of which ought to put a prudent man on inquiry, which would have readily disclosed the true condition of the title, and appellant is charged with notice of respondent's claim, whether his deeds were so acknowledged as to entitle them to go of record or not. (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; 39 Cyc. 1703.)

The judgment of the trial court was that the plaintiff (appellant) take nothing by its complaint, and that the defendant (respondent) have judgment against the plaintiff for his costs. The respondent, before the commencement of the action, tendered to the appellant and deposited into court $120, in which sum he is indebted to appellant for the maintenance of said irrigation system for the years 1906, 1907, 1908, 1909 and 1910, being $24 a year. The appellant is entitled to judgment against the respondent in said amount, and the respondent is entitled, under sec. 4909, Rev. Codes,

to judgment against the appellant for his costs incurred in the district court, and judgment should have been entered accordingly. Aside from this we find no error in the record. The cause is remanded to the district court with instruction that the judgment be modified as above indicated. Costs upon appeal are awarded to the respondent.

Budge, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates.

The facts as to the location of the two water rights from one or both of which the rights involved here were sold and conveyed to the grantors of the respondent, are substantially as follows:

One Morris, on August 7, 1877, filed his water right location in the recorder's office of Ada county, claiming sufficient water from Boise river to fill a ditch twelve feet wide on top from bank to bank, eight feet wide on bottom, and three feet in perpendicular depth. The location notice provides that said "water is to be used for milling, manufacturing, agriculture and for purposes of irrigating and subjecting waste and desert lands to settlement, use and cultivation," Such a ditch as therein described, with the usual fall, would perhaps carry 4,000 inches of water. The locator, Morris, died and in 1880 all of his right, title and interest to said water right and the ditches connected therewith descended to his widow and to W. H. Ridenbaugh, and it was so decreed by the probate court of Ada county. Thereafter on August 20, 1888, W. H. Ridenbaugh filed his water location notice with the recorder of said Ada county, claiming 30,000 inches of water of said river to be diverted from said river by means of a ditch thirty feet wide on bottom, fifty feet wide on top and eight feet deep, and it is stated in said notice that said water is to be used for irrigation, domestic, agricultural and mechanical purposes on the lands below the point of diversion, and it is also recited in said notice that said location of water is made as an additional one to that made by Morris on August 7, 1877.

Here we have at least 34,000 inches of water located for the irrigation and reclamation of lands in Boise valley, to be diverted at the same point from Boise river, through one canal system, to the lands to be irrigated. Prior to the time that De Cloedt, the predecessor of the respondent, purchased the water rights consisting of one cubic foot each, involved in this case, the purchaser knew that the canal to convey such water to the lands intended to be irrigated was to be sufficiently large to convey said 34,000 inches of water to the lands intended to be irrigated. He purchased said water rights in 1889 at the time that Jones & Co., or the Central Canal & Land Co., was enlarging said canal.

It appears from the record that Frank De Cloedt and his brother were farming the land owned by the respondent in connection with other land owned by the brother at the time Jones & Co. were enlarging said canal in 1889. They sold to Jones & Co. a large amount of the products of the farm, and when they came to settle there was about sufficient due to pay for the Frank De Cloedt water rights, and that was the consideration given by Frank De Cloedt for the water rights that he afterward transferred to the respondent, the consideration for the two water rights being $1,280, or $640 for each water right consisting of a cubic foot of water per second of time.

Water right certificates or contracts of sale and purchase were made by the Central Canal & Land Co. with Frank De Cloedt for said two water rights, one on June 15, 1889, and two others for one-half of a water right each, on or about January 4, 1890. In said certificates the Central Canal & Land Co. agreed upon the surrender of those certificates properly assigned and indorsed to execute a good and sufficient deed in manner and form "as now adopted by said company." Thereafter on June 10, 1891, water right deeds were executed to said Frank De Cloedt by said Canal & Land Co. for the water rights represented by said certificates.

Said corporation, the Central Canal & Land Co., was organized under the laws of the territory of Wyoming, for the purpose of procuring water rights and canals for irrigating

and reclaiming desert lands in the territory of Idaho. The water was to be sold or rented for the reclamation of such lands.

On October 1, 1888, Ridenbaugh and his associate sold and conveyed by warranty deed the water right located by said Morris and also the water right located by said Ridenbaugh consisting of about 34,000 inches, to said Central Canal & Land Co. It will thus be seen that at least the greater portion of said 34,000 inches of water was to be used in the reclamation and irrigation of land in, about and below the land of the respondent, and the construction of canals of sufficient capacity to take said water from the point of diversion to and upon the lands intended to be irrigated was commenced some time before De Cloedt purchased the water rights referred to.

Thereafter said canal company sold and conveyed to one Morrill said water rights, canals and ditches. Said Morrill thereafter conveyed said property to the Boise City & Nampa Irrigation Land & Lumber Co., a corporation organized under the laws of the territory of Idaho, for the purpose of irrigating and reclaiming desert lands and for selling, leasing and renting water rights for any and every purpose.

It appears from the record that thereafter said water rights and ditches were sold at least twice at sheriff's sale, but no question is raised on this appeal in regard to the effect of such sales.

Thereafter in 1905 the plaintiff, the Nampa & Meridian irrigation district, an irrigation district organized under the laws of the state, purchased said water rights and canals. Thus it appears from the facts of the case that said water was located and appropriated principally for sale, rental and distribution for the reclamation of desert lands.

Said deeds on their face convey to said De Cloedt said water rights for the consideration of $1,280, which rights were intended for the reclamation of 160 acres of land, and the consideration paid therefor would average eight dollars per acre for said 160 acres of land. Said deeds contain,

among other stipulations, an executory contract, which is as follows: '

"The said first party agrees on its part to keep and maintain said canal in good order and condition, and in case of accident to, or breach in, or damage to the same, to repair the injury occasioned thereby as soon as practicable and expedient.

"The second party, his heirs, executors, administrators and assigns, agree to pay said first party, its successors or assigns, on or before the first day of May in each year hereafter, the sum of twelve (12) dollars on each water right covered by and granted by this indenture and agreement, and a proportional sum on each proportional part of a water right, as assessment for the management and maintenance of said canal for the ensuing year. . . . . "

Those stipulations are no part of covenants that run with the title. The deed itself conveying the water right is an executed contract, while the stipulations above quoted have nothing whatever to do with the title conveyed and are merely an executory contract injected into the deed of conveyance.

By that executory contract the grantor agrees to keep the ditches or canals in proper condition each year, for which the grantor promises to pay twelve dollars per annum on the first day of May as his share of the "assessment for the management and maintenance of said canal for the ensuing year" for each water right. This assessment is for the management, up-keep and maintenance of the canal each year and is not a covenant that runs with the title so as to burden all of the remaining water rights and canal system with the expense of keeping the same up, provided it required more than twelve dollars per annum to maintain and keep said canals in proper repair.

Is it possible that under the law a canal owner, by a mere stroke of his pen or by entering into an executory contract, such as the one above recited, can so encumber a canal system and the water rights connected therewith with an obligation in favor of a part of the water owners thereunder, requiring other owners of water rights for all time and without com-

pensation to maintain and keep up the canals for the benefit of those who refuse to pay their proportionate part of the maintenance charges? Can a canal owner by entering into a contract, such as the one referred to, place such a heavy liability upon the remaining part of his property? I think not, especially when the water and canal system was located and constructed for a public use. Water appropriated for distribution and sale is *ipso facto* devoted to a public use, and a canal system through which such water is conveyed is also devoted to a public use.

Under our statute, which permits the acquisition of rights by appropriation of water for sale or rental, the water so appropriated becomes perforce *publici juris*. (Sec. 372, Kinney on Water Rights, and authorities there cited.)

Since Idaho became a territory, the legislature has had the right to regulate and control the waters of the state, and as early as 1881 the territorial legislature enacted a law to regulate the right to the use of water for mining, agricultural, manufacturing and other purposes (see 11th Terr. Sess. Laws, p. 267), and the 19th section of that act is substantially the same as sec. 3189 of the Revised Statutes of 1887, which section establishes the policy of the territory in regard to water located for sale or rental for irrigation purposes, and is in part as follows:

"In case any person, company or corporation has constructed a ditch for the purpose of directing the water of any river, creek, canyon, ravine or spring for the purpose of selling the water thereof for irrigating purposes, the owners or cultivators of land along the line of, and covered by said ditch or canal, are entitled to, and have the right to the use of water from said ditch or canal for the purpose of irrigating said land so owned or cultivated, in the following order: *First,* all persons through whose land said ditch or canal runs, are entitled to the use of the water thereof in the order of their location along the line of said ditch or canal. . . . . *Provided,* that the owners or cultivators of such lands pay the usual and customary rates for the use of said water."

And a canal owner at that time, whether a private person or a corporation, had no authority or right to grant to anyone a preferential right in regard to the maintenance and upkeep of the ditches or canals required for the distribution of such water from year to year. It is a monstrous proposition, to me, that by such an executory contract as was inserted in the deeds referred to, those who are not parties thereto should be bound or the title to other property of the obligor be affected by such a contract, or that by entering into such a contract a transient bankrupt owner of a canal and water rights, having the right to sell water rights and distribute such water, could perpetually burden a part of such public water or an interest in the canal distributing the same with a preferential right in favor of certain parties and place the great burden of maintaining such canal on others.

Here is a mere deed to a water right containing an executory contract that is not a covenant running with the title, and my associates hold that it affects other property owned by the grantor although such other property is not mentioned in the deed. Said instrument ought to be construed as an ordinary deed to realty, since water rights are declared to be real estate under our statute, and an executory contract inserted in such a deed cannot, under the law, be permitted to cast a burden upon other property or water rights of the grantor not mentioned in the deed. The deeds in question should be construed as deeds to realty and the executory contracts therein as contracts between the parties to them, and under the facts of this case and the law, they ought not to be so construed as to give a preferential right to anyone.

It is claimed that the grantor in said deeds had an absolute right to make said executory contract under the laws that existed at that time. While we might concede that the parties to those contracts could make them under the law, if they did it was a question between the grantor and the grantee, and the grantor could not cast the burden sought to be cast in this case upon subsequent purchasers of water rights in said canal. Our constitution did not change the rule of law

Idaho, Vol. 27—8

in regard to granting preferential rights that already existed in this state, since preferential rights could not be granted by persons or corporations who had located and appropriated waters for sale and rental prior to the adoption of the constitution. It has been recognized ever since Idaho became a territory that the waters belong to the people, that they are *publici juris,* and could only be used for irrigation upon the terms prescribed by the legislature, and the clear policy of the law was that no preferential rights should be granted and that no discrimination should be made against the users by the canal owners.

The provisions of the state constitution in regard to water rights did not make any changes in the customs and laws that prevailed in the state at the time the constitution was adopted, but merely amplified the law as it existed in relation to water rights and the sale and distribution of water. The principles in regard thereto declared in the constitution had already been recognized by the territorial laws and the decisions of the courts to the effect that the water belonged to the public and that it could only be used for irrigation purposes upon the terms prescribed by the law and customs. As early as 1881 (Sess. Laws 1881, p. 272) the legislature provided, among other things, that the owners or cultivators of land along a canal were entitled to the use of water therefrom upon the payment of the usual or customary price therefor,— not a preferential price, but the customary price.

The water corporation that issued said certificates and deeds procured its rights for the purpose of serving the people to the extent of the water claimed by it and the capacity of its canals, under the laws of the then territory of Idaho, and it was clearly a public service corporation without any declaration of the legislature that it was so. The giving of preferential rights by public service corporations was contrary to, and in violation of, the public policy of the territory and the principles of common law. The Central Canal & Land Co. was charged with a public trust or duty, and in the absence of any specific legislation on the subject, it would, under the common law, be required to perform the service

without giving preferential rights because of the public nature of the business, and because of the public nature of the business it is bound to serve all persons without discrimination or without giving to anyone a preferential right.

Judge Thompson, of the Central Law Journal (see 45 Law Journal, p. 278), has a well-considered article supported by numerous authorities in regard to the duties of corporations that serve the public. He there states that a great multitude of cases unite in holding that where a public corporation undertakes to perform a public service to individual members of the public, an obligation to perform is implied, whether the statutes of the state expressly require it or not. It is sufficient if such a duty clearly arises under the principles of the common law, and that such corporations are charged with what the court terms a public trust or duty, and in the absence of legislation on the subject, it would for these reasons be required under the common law to perform them. And because of the public nature of the business, it is bound to serve all persons applying for its service without discrimination. He says: "The state cannot be supposed to have granted such a franchise to enable the grantee to destroy one person and build up another."

Now, in the case at bar, the respondent, under his preferential right, is required to pay but $24 a year for canal maintenance for 160 acres, while other land owners similarly situated and without such a preferential contract are required now to pay annually $100 for the maintenance and up-keep of the canal, thus making a difference in favor of the respondent and others of $76 a year. The farmer without the preferential right would need to raise on his ranch $76 worth of products more than the one with the preferential right in order to keep even with him, provided other expenses were the same; and if the profits of the farm were very small, this difference of $76 might make the farm of the one a losing proposition and give the other a small profit, thus destroying one person to build up another.

I do not think it can be successfully denied that the Central Land & Canal Company who undertook to give this

preferential right was a public service corporation. It certainly was charged with public duties. Its thirty-odd thousand inches of water at the rate of one cubic foot of water per second of time to eighty acres of land would serve about 50,000 acres of land, which, if distributed among farmers at the rate of eighty acres each, would supply more than six hundred farmers. And to say that a corporation that has undertaken to supply a community of six hundred farmers (who with their families no doubt would number over 2,000 people) with water for the irrigation of their lands, is not a public service corporation, certainly is not consistent with the rules of the common law or the statutes.

Counsel for respondent state in their brief that "A canal company at a time of financial need might receive sufficient consideration for a perpetual water right so that the annual income from such water rights might thereafter be established in conformity with law." Simply because a public service corporation may at some time be in distress would not justify it in granting a preferential right forbidden by both the common law and the statutes, and contrary to public policy.

It is suggested by the majority that this preferential contract was not prohibited by statute, and is therefore a valid, binding contract, and that being true, the federal constitution prohibits states from passing laws impairing the obligation of contracts.

In my view of the matter, this preferential contract, except as to the original parties to it, is absolutely void as to all subsequent purchasers of water rights from said canal system, and therefore does not come within said provision of the federal constitution which prohibits states from passing laws impairing the obligation of contracts. The contracts there referred to are legal, binding contracts, and said provision does not apply to contracts made against public policy or to contracts that have no binding force or effect upon persons not parties thereto.

What are the facts in regard to this transaction? The respondent's grantor procured these water rights at the rate of eight dollars per acre for 160 acres. By those deeds he

simply acquired the right to the use of the water and thereafter no charge could be made for the use of such water and no charge is sought to be made in this action for the use of such water. But the charge here sought to be made is for the annual maintenance and up-keep of the canal which is costing other users annually fifty dollars per cubic foot of water, and defendant offers to pay but twelve dollars per cubic foot.

The grantor of the defendant has paid $1,280 for the right to the use of two cubic feet of water per second of time. The consideration paid, to wit, $1,280, was for the use of said water and the plaintiff irrigation district is not attempting to make respondent pay for the use of the water, but only for his proportionate share or part of the annual cost of management and maintenance of said canal system. The farmers included within said irrigation district are paying for the use of the water used by them by annual assessments made against their land, the proceeds of which go to pay the bonded indebtedness of said district created by the purchase of said water rights and canal system. That is the method and manner in which they pay for their use of the water. In addition to such payments, all users are assessed annually for the management and maintenance of the canal system. When said water-users pay off said bonded indebtedness they will have paid for the use of their water. They pay for such use by annual instalments, while the respondent's grantor paid for his use of the water by making one payment of $1,280. After each has fully paid for the use of the water, he ought to pay his proportionate part of the cost of the annual management and maintenance of said canal system without any preference whatever, at least so far as other water-users from said canal are concerned.

Said deeds to De Cloedt contain the following stipulation:

"The said second party, his heirs, executors, administrators or assigns agree to pay said party, its successors or assigns, on or before the first day of May in each year hereafter, the sum of twelve dollars on each water right covered by and granted by this indenture and agreement, as assessment for

the management and maintenance of said canal for the ensuing year.''

Could language be plainer in order to express just what said twelve dollars was agreed to be paid for annually? It is, ''as assessment for the management and maintenance of said canal for the ensuing year,'' and not as a part of the consideration for the use of water represented by said two water rights.

The right to the use of water is one thing and a very different thing from the cost of the management and maintenance of a canal system through which to conduct such water to the place of intended use.

That stipulation to pay the twelve dollars annually for the management and maintenance of said canal system is nothing more or less than a personal contract between the canal company and De Cloedt and is entirely independent of the covenants of the deed conveying the title to the use of the water, and is only an ordinary contract of employment. It is merely an agreement by one party to perform certain labor for another *annually* each succeeding year for an agreed annual price. It in no manner affects the right or title to the use of the water and is not binding upon subsequent purchasers of water rights or the right to use water from that canal system.

In the case of *Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993, this court said:

''The company cannot, however, sell and dispose of free water rights, and thereafter claim a sufficient water rate from other consumers to pay it a profit on the free water rights thus disposed of.''

This rule is also applicable to free management and maintenance, or a preferential contract therefor.

So in the case at bar, a water corporation, such as the one under consideration, cannot perpetually give to one user of water through their canal system a right to flow water for a less price annually than is required to be paid by other water-users for doing so.

The majority opinion cites a number of decisions of this court as sustaining the conclusion reached by them, to wit: *Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81; *Jackson v. Indian Creek etc. Irr. Co.*, 16 Ida. 430, 101 Pac. 814, and the same case on a second appeal, 18 Ida. 513, 110 Pac. 251; *Nampa & Meridian Irr. Dist. v. Gess*, 17 Ida. 552, 106 Pac. 993. However, as I view the matter, those authorities do not sustain the views expressed by the majority of the court and are not applicable to the question under consideration in the case at bar, and preferential rights for the management and maintenance of a canal system were not in issue in those cases.

In the Knowles-New Sweden case, Chief Justice Ailshie prepared the opinion, and in the very first paragraph he states: "This appeal involves the power and authority of an irrigation district organized under the laws of this state to levy assessments for the purposes of defraying the principal and interest on bonds issued for the purchase of an irrigation system against the lands of one who owned his own water right and privileges at the time of the organization of the district and the levying of the assessment." The main point considered in that case was the right of the district to levy an assessment for the purpose of paying the principal and interest on the bonds of said irrigation district issued for the purchase of the irrigation system against lands of one who owned his own water right. Of course, it would not be just and right to compel a person to pay for the use of water when the right to its use had been already purchased and paid for by him. In the case at bar the appellant irrigation district does not demand of the respondent that he pay the same assessment that other water-users are required to pay for the interest and bonds of said district, but it only demands that he pay his proportionate part for the maintenance and repair of the system through which his water is conducted. So that case is easily distinguished from this case. In that case Knowles had agreed to pay a dollar per year for the maintenance and repair of the canals and no question was raised but that that amount was amply sufficient for that purpose.

One dollar per inch for water was all that the appellant district demanded of this respondent for the maintenance and repair of the ditch. Had he paid that sum this suit would probably never have been brought. One dollar per inch is all that is now required to be paid by any of the water-users in said district for the maintenance and repair of the canal; but whatever the charge, it must be the same to each user and no preference given. No doubt if said canal is finally required to be lined with cement its entire length of about forty-two miles, the maintenance charge per annum will be increased.

The case of *Jackson v. Indian Creek Reservoir etc. Co.,* 16 Ida. 430, 101 Pac. 814, is not in point. It appears from the record in that case that the Orchard Irrigation Company constructed the Orchard Reservoir and Irrigation system about the year 1893 or 1894 and sold to the plaintiff in that case a water right for $1,200; that it was estimated the reservoir would hold sufficient water to irrigate 8,400 acres, and in disposing of said water rights to different parties it was intended and expected to put all on an equality in regard to the price of a perpetual water right and for the charges for maintenance and keeping the system in repair; that all of the contracts provided that ten cents per miner's inch for all water used should be paid each season for the management and maintenance of said canal; that the company sold all of said water rights at fifteen dollars per acre for a perpetual water right; that a number of the purchasers commenced the actual use of the water from said reservoir; that about 1900 or 1901 the said Orchard Irrigation Company defaulted in the payment of its taxes and also permitted a judgment to be obtained against it under which judgment the reservoir and canal system were sold at sheriff's sale, and in the default of the payment of taxes on the lands, the lands were sold for taxes; that in 1901 the Orchard company practically ceased to operate said canal; that from 1901 to 1907 the plaintiff's lands were the only lands that were irrigated from said reservoir and canals; that said reservoir only furnished about fifty or sixty inches of water; during those years the

plaintiff kept up the ditches so far as they were kept up. The Indian Creek Irrigation Company acquired title to the reservoir in controversy and certain lands through said execution sale and the tax sales referred to, and said action was brought by said corporation for the purpose of determining · plaintiff's right to the use of sixty inches of water from said canal. The main point urged against the validity of said contract was that it fixed the maintenance charge at ten cents per miner's inch, and the argument made against that provision in the contract was based upon the provisions of sec. 6, art. 15, of the constitution, which is as follows: "The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose." From those provisions it was argued that the power to fix the rates by contract was taken away and such power given solely to the legislature. This court there held that the legislature had by the enactment of sec. 3288, Rev. Codes, authorized the parties to contract with reference to the rate to be charged for furnishing water for irrigation purposes, and referred to the statute which provides for the fixing of rates by the county commissioners, and said:

"Whether that rate [the rate fixed by contract] can afterward be abrogated by the fixing of such rates under the statute by the board of county commissioners, we are not called upon to decide in this case, for the reason that it does not appear that such rates have ever been established by the board of county commissioners or in accordance with such statute."

The question of preferential rights was not raised in that case. Every user who had purchased water was entitled to it under the contract at the same price, to wit, ten cents per miner's inch per annum; and while the court held that that contract was valid, it did not hold nor intend to hold that preferential rights could be granted.

In the case of *Nampa & Meridian Irr. Dist. v. Gess*, 17 Ida. 552, 106 Pac. 993, it was held that the grant in a conveyance of a "free and perpetual use of water" does not obligate the

grantor or his successors to perpetually bear and pay the expense and cost of maintaining and repairing the canal and delivering the water to the consumer, and is in line with my views as expressed in this opinion, that no preferential rights shall be granted by such a canal company.

In *Leavitt v. Lassen Irr. Co.,* 157 Cal. 82, 106 Pac. 404, 29 L. R. A., N. S., 213, it was held that a water company having water appropriated for sale, rental or distribution, the use of which is a public use, cannot confer any preferential right to one consumer over another to the use of any part of its water; and that a corporation which has appropriated water for sale, rental or distribution is simply an agent of the public for the distribution of the water to such members of the public as may apply for it and pay the legal charge for the services rendered.

In the case at bar, each of the users of water has paid for the use of their water, or are paying for it, and each ought, under the law, to be compelled to pay his proportionate share of the cost of the annual management and maintenance of the canal system.

The judgment of the district court ought to be reversed and the cause remanded for a new trial.