(May 10, 1911.)

## JOHN L. GERBER, Respondent, v. NAMPA & MERIDIAN IRRIGATION DISTRICT, a Corporation, Appellant.

[116 Pac. 104.]

WATERS AND WATERCOURSES—CANAL COMPANIES—PRIORITIES AMONG CONSUMERS—MANDAMUS TO COMPEL DELIVERY—FORM OF JUDGMENT.

(Syllabus by the court.)

1. A decision of the supreme court on appeal establishes the law of the case for the guidance of the trial court, and for the purposes of a subsequent appeal.

2. There is a priority among consumers from a canal analogous to that which exists among appropriators from a natural stream, and the rights of later applicants for water are subordinate to those of prior consumers, which, when exercised in full, exhaust the carrying capacity of the canal.

3. Evidence showing the use of drain or waste water, or water primarily belonging to a prior consumer under a canal system, does not establish a dedication of water direct from the canal to the lands of such user.

4. Evidence showing the delivery of water directly from a canal for the express purpose of irrigating a certain tract of land establishes a *prima facie* dedication of water to such tract.

5. Evidence showing the capacity of a canal, the loss by seepage and evaporation, and the acreage irrigated therefrom, is insufficient to show whether or not the waters of the canal have been fully dedicated, in the absence of any proof of the duty of water, or of the aggregate number of inches of water to which consumers who have acquired a prior right are entitled.

6. Where the evidence shows the average duty of water under a canal to be five-sevenths of an inch to the acre, a judgment awarding over seven-eighths of an inch is erroneous, in the absence of any testimony establishing a lower duty of water on that particular tract.

7. Where on an application for a writ of mandate to compel the delivery of water the evidence establishes a dedication inferior to that of prior consumers, a judgment awarding the plaintiff the same right as prior consumers is erroneous, and should be modified so as to make such right subordinate to that of the prior consumers.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Ed. L. Bryan, Judge of the Seventh Judicial District, presiding.

Application for writ of mandate to compel the delivery of water to plaintiff. Judgment for plaintiff and defendant appeals. *Reversed.*

McElroy & Winstead, for Appellant.

Where waste water is furnished by a canal company to an applicant under a sale and rental thereof, "the same becomes a dedication only of such waste water; and the user thereof can only maintain an action against the canal company compelling the company to furnish the user with such waste water, if any, and cannot compel the canal company to furnish a perpetual supply of water such as is required to be furnished to an original appropriator." (*Gerber v. Nampa & Meridian Irr. Dist.*, 16 Ida. 1, 100 Pac. 80.)

"If water has been received under a sale or rental and applied to a beneficial use upon land, then such water is dedicated to such use; and when such user applies to the court to compel the canal company to furnish such water, he makes a *prima facie* case by showing the previous use," etc. (*Gerber v. Nampa & Meridian Irr. Dist., supra.*)

Richards & Haga, for Respondent.

This court has defined what a dedication of such water is in the case of *Wilterding v. Green,* 4 Ida. 786, 45 Pac. 773. See, also, *Bardsley v. Boise Irr. etc. Co.,* 8 Ida. 160, 67 Pac. 428, and this case on former decision, 16 Ida. 1, 100 Pac. 80.

The appellant failing to produce the stronger evidence, that is, the dimensions and grade of its canal, and the number of consumers, and the dates their respective rights accrued, from which the court could have determined the capacity of such canal and the priority of such rights, lays the appellant open to the suspicion that the stronger evidence would have been to his prejudice. (*Clifton v. U. S.,* 45 U. S. 244, 11 L.

ed. 957; *Runkle v. Burnham,* 153 U. S. 223, 14 Sup. Ct. 837, 38 L. ed. 697; *Spaulding v. Coeur d'Alene Ry. Co.,* 5 Ida. 533, 51 Pac. 408; 5 Ency. Law, 41, note 2, and cases cited.)

MacLANE, District Judge.—This is an application for a writ of mandate to compel the defendant, an irrigation district, to supply plaintiff with water, a right to which he claims to have established by payment of rentals and actual use on his land during the years 1904, 1905 and 1906.

The case has been here before and is reported in 16 Ida. 1, 22, 100 Pac. 80, 88. The facts are fully stated in that opinion and the law applicable to those facts is established conclusively for the purposes of this case, at least. The case was there remanded for a new trial, and the only question which arises now is whether or not the trial court followed the law announced in the prior decision of this court as applied to the evidence adduced on such new trial. The testimony taken on the first trial was resubmitted by stipulation and additional evidence was also introduced.

A résumé of sufficient facts to make this opinion intelligible is as follows:

The plaintiff is the owner of land within the exterior limits of the defendant district, which purchased from the Boise City Irrigation & Land Company a canal locally known as the Ridenbaugh canal. During 1904, 1905 and 1906, the predecessor in interest to the plaintiff, one G. T. Kinzer, took water for the land now owned by the plaintiff, from two taps of the Ridenbaugh canal, designated in the evidence as Nos. 75 and 77. The water taken from tap 77 was applied directly to this land from the canal, but at tap 75 the water was carried from the tap through a lateral belonging to the Wilson Fruit Company and was emptied from a flume on this lateral into a ditch known as the Wilson drain, constructed for the purpose of carrying away the waste water from the Wilson orchard and other lands. It is undisputed that the only water used by Mr. Kinzer on the land in question during 1904 was waste water from the Wilson orchard, and he paid rental for it as such. Whether or not he received any "live water,"

that is, water not previously devoted to the use of some other tract, in 1905 and 1906, is a matter of dispute between the parties. It is conceded that he paid rental for water during those years. There is also a dispute between counsel as to whether or not, conceding that Mr. Kinzer received live water during 1905 and 1906 through tap 77, there was any water which had not been already dedicated to other users.

On these facts this court, on the former appeal, held that the provision of art. 15, sec. 4, of the constitution, that a sale, rental or distribution of water, when once made, shall be deemed an exclusive dedication of the water to the use for which it is made, does not create a perpetual water right from a temporary delivery of water, belonging to prior consumers from the same canal whose rights exhausted the carrying capacity of the canal, at times when such prior consumers did not require the full amount of water to which they were entitled; that the dedication of water to a beneficial use, under this section of the constitution, does not extend beyond the character of the water so dedicated, and where all the waters have been appropriated and applied to a beneficial use but are furnished under a sale or rental to a subsequent applicant, the dedication to the latter extends only to the right to use the water when not required or needed by the prior appropriators; that where waste water only is furnished, it is a dedication only of such waste water, and the user can only maintain an action to compel the canal company to furnish him with such waste water, and cannot compel it to furnish a perpetual supply of water such as is required to be furnished to an original appropriator.

It was further held that on an application for a writ of mandate to compel a canal company to furnish an applicant with water, the burden is upon him to show that there is unappropriated water in the canal, unless he has previously used water from the canal under sale or rental, in which event the burden is on the company to show why it has since cut off the water and refused to furnish the same.

As we read this decision, it construes sections 4 and 5 of article 15 of the constitution as creating a priority among

consumers from a canal analogous to that which exists among appropriators from a natural stream. Section 5 provides, in part, that "Whenever more than one person has settled upon, or improved land with the view of receiving water for agricultural purposes, under a sale, rental, or distribution thereof, as in the last preceding section of this article provided, as among such persons priority in time shall give superiority of right to the use of such water in the numerical order of such settlements or improvements." After quoting this section, we said (p. 25):

"Where all the water of a canal has been appropriated and applied to a beneficial use under a sale or rental, and when not needed by such appropriators, is furnished under a sale and rental to a subsequent applicant and is used by such applicant for a beneficial use, the dedication extends only to the right to use such water when not required and needed by such prior appropriators. The rights of the prior appropriator must at all times be recognized; and in an action to compel the owners of a canal to furnish water to such subsequent applicant, the canal company can only be compelled to furnish the water so dedicated by such applicant, that is, the waters applied to a beneficial use by him when not needed by the prior appropriators thereof."

At the conclusion of the retrial, the judgment, from which this appeal was taken, was entered, and by it the defendant was ordered "to deliver, or cause to be delivered to the said plaintiff, John L. Gerber, his heirs, administrators, grantees and assigns, through the lateral leading from that certain canal system owned and operated by the said defendant at what is known as tap No. 75 of said system, one cubic foot of water per second of time, and two-fifths of a cubic foot of water per second of time through the lateral leading from such system at what is known as tap No. 77 . . . . , subject, however, to a proportionate reduction in common with all consumers of water from such irrigation system and within the said Nampa & Meridian Irrigation District, in the event of shortage of water in the Boise river."

It will thus be seen that by this decree the court established in the plaintiff's favor a perpetual water right of the same grade of priority as that possessed by settlers prior to 1904, whose dedication dated back to the inception of the Ridenbaugh canal system, which the evidence shows to have been in operation at least since 1894, and, in fact, as is well known, extended back for some thirty years prior to the dedication claimed by the plaintiff. In order to justify this decree, there must be sufficient evidence in the record to sustain the findings that the defendant's predecessor, the Boise City Irrigation & Land Company, during the irrigation season of 1905, delivered water through its canal for the irrigation of the plaintiff's land, under sale or rental thereof, and that the full capacity of the canal system, or the water carried by such system, had not been applied to a beneficial use by users of water prior to the plaintiff. To a consideration of these questions of fact we now address ourselves.

With reference to tap No. 75, the evidence is undisputed that the lateral leading from this tap was constructed for the purpose of delivering water to the Wilson Fruit Company, and that water from the defendant's canal could reach the land owned by plaintiff only by being emptied from a flume in that lateral into the drain or waste ditch of the Wilson orchard. This drain or waste ditch was constructed primarily and solely for the purpose of drainage, and its use as a conduit for water to the land in question was not in contemplation when it was built. Mr. Kinzer, the plaintiff's predecessor in interest, was the owner of this land in 1904, 1905 and 1906, and was at the same time manager of the Wilson orchard. In 1904 he used the drainage or waste water from this orchard for irrigating his land. There is no contention that he received any live water during that year. The principal contention is with respect to 1905. Mr. Kinzer testified with respect to that year that he could not state positively whether or not he made an application at tap No. 75 for water for this land; that he talked to Mr. Green, the manager of the canal, in that year about getting water; that on the occasion of this conversation he told Mr. Green that they were not getting their

full amount of water; that the next morning the amount of water at tap 75 was increased—"I don't know how much. My land was benefited to the extent that the waste water in the Wilson drain was increased by this increase of water. That is the only way that I benefited by that increased quantity of water. The increased head of water, however, was not equal to the amount of water that the Wilson Fruit Company ordinarily got."

In 1906 Mr. Kinzer paid $70 water toll for this land, and took the company's receipt therefor. This toll was at the rate of one dollar an inch for seventy inches for the land. During that year the question was raised as to the quantity of water which was received at tap 77, and some water was turned out there, but "all of it did not exceed the amount the company was entitled to, and there were two or three other parties besides myself entitled to water that were getting the water there." This water was changed by a card notice over to tap 75 later in the summer, and ran there during the balance of the irrigation season. Mr. Kinzer's son, Ernest Kinzer, who was a boy of fourteen years at the time, stated that tap 75 carried water to the Wilson Fruit Company's ranch; that he knows positively that about fifty inches of water was taken out at tap 75 and ran directly down to the land in question and used thereon; that the water was turned out there pursuant to his father's order, indicated by a card put in the box at the lateral gate; that he never measured the quantity of water that ran through the gate, but the manager of the orchard made a practice of turning this live water into the Wilson ditch and took it up for irrigation in time of need.

This is substantially all the testimony that was introduced by the plaintiff as to the dedication of water to this land during the period in dispute, and while there were several witnesses that testified to the effect that Mr. Kinzer was using water from the Ridenbaugh canal through the medium of the Wilson lateral and drain ditch, none of these witnesses attempted to state whether the water so used was live or waste.

According to the plaintiff the full benefit of this testimony, it falls short of establishing that his predecessor in interest received any water other than Wilson orchard water. He was manager of the orchard at that time; as the witness for the defendant testified, "he had the run of the drain." In other words, being in charge of both places, if the water was not used on the orchard, he could use it upon the land in question. None of the testimony of any of the plaintiff's witnesses is inconsistent with the express statement that the head of water which he received on complaint was not equal to the amount which the Wilson Fruit Company ordinarily got. It is therefore our opinion that the evidence fails to sustain the finding that the defendant's predecessor delivered water for the irrigation of this land during the seasons in controversy through tap 75. The fact that Mr. Kinzer paid rental for this water does not, as expressly stated in the former opinion, give plaintiff "a right to demand and receive water directly from the irrigation system of the appellant" (p. 28).

With respect to tap 77, a somewhat different state of facts is presented by the record. There the evidence is sufficient to show that water was delivered for the express purpose of irrigating twelve acres of the land in question during 1905. It was not waste water dedicated primarily to some other tract, and whether it was surplus water or not, a sufficient *prima facie* case was made to sustain the finding of the court on the issue we are here considering, and to impose upon the defendant the burden of showing that it had no unappropriated water sufficient to supply the right claimed by the plaintiff.

Turning, then, to the second question, as to whether the full capacity of defendant's system had been applied to a beneficial use by users prior to plaintiff, we find the following testimony in the record: The witness Horton, who has been superintendent of the Ridenbaugh canal since the defendant acquired the same, stated, in answer to a general question, that the canal carries no surplus water, and that all the water carried was used. He further testified that with a full head

of water in the rating flume there was 23,000 inches running
in the canal.   This, as we understand it, is at the head of
the canal.   He stated, further, that the water was short in
July and August, when evaporation and seepage was heavy;
that the canal delivers about 19,000 inches, and each user
decides for himself what amount of water he is entitled to;
that the amount is shown by a book of the company, and de-
liveries are made according to the amount previously used.

Mr. Green, who was manager of the canal from 1894 to
1905, testified that the amount of water to which customers
are entitled is stated in a book showing the amount used from
1894 to 1905, and each farmer had determined the amount
which he was to use; that in 1903, 18,865 inches of water was
delivered; that the usual delivery to the acreage which they
watered was 18,600 inches.   In 1903 and 1904 the delivery
was to 26,494 acres, and in 1905 to 27,042 acres; that the loss
from seepage and evaporation, as shown by the difference
between the delivery at the farmers' headgates and the gauge
at the head of the canal, was 4,200 inches.

From this testimony it appears that at the time of the
accrual of plaintiff's right, if any, the defendant delivered
18,865 inches to 27,042 acres of land; that the carrying ca-
pacity of the canal was 23,000 inches, and its loss from seep-
age and evaporation was 4,200 inches.   There is nothing to
show how much water the users whose rights antedate the
plaintiff's require to successfully irrigate their lands.   There
is no express testimony which shows that the acreage to which
the water was delivered excludes the lands of the plaintiff.
There is no proof of the duty of water, and none of the
aggregate number of inches dedicated to users prior to the
plaintiff.   We do not think that on this showing there is
sufficient evidence to either sustain the burden on the defend-
ant of showing the exhaustion of the supply before the accrual
of plaintiff's right at tap 77, or to sustain the burden which
was on the plaintiff to show that the supply had not been
exhausted at the time of the accrual of his right at tap 75.

Finding No. 15, that twenty inches of water is necessary
to be delivered through tap 77, and fifty inches through tap

75, for the irrigation of plaintiff's land, is assailed by the defendant as not sustained by the evidence.

We think this assignment of error is well taken. There is no evidence in the record that that amount of water in continuous flow was ever delivered to the plaintiff, and there is no evidence of the duty of water as applied to the plaintiff's land. The only evidence which throws any light on the duty of water is the testimony referred to above, that 18,865 inches was delivered for the irrigation of 27,042 acres of land. This would make the duty of water approximately five-sevenths of an inch to the acre, and for the plaintiff's seventy-seven acres which he has under cultivation, would entitle him, at the most, to not over fifty-four inches.

The defendant further makes the following general specification of error:

"The judgment appealed from requires appellant to prorate the water from its canal to the respondent in common with all other users of water, regardless of priority of rights and regardless of the fact that the only right of respondent to water from said canal is a secondary right and cannot be supplied when parties having the first rights demand their full amount of water."

We have already quoted the material part of this judgment and there is no question but that it has this effect. We have also referred to the language used by this court on the former appeal in the construction of section 5 of article 15 of the constitution, particularly that language where it is said: "The rights of the prior appropriator must at all times be recognized; and in an action to compel the owners of a canal to furnish water to such subsequent applicant, the canal company can only be compelled to furnish the water so dedicated by such applicant, that is, the waters applied to a beneficial use by him when not needed by the prior appropriators thereof."

It appears from the record that at the time of the organization of the defendant district, the lands within its territory were classified into wet and dry lands; that the bond issue for the purchase of the Ridenbaugh canal was assessed solely

to the wet lands, and such lands are charged $1.32 per inch per year in addition to the water toll of $1 per inch; that the plaintiff's lands are dry lands, and have not been assessed with any part of this bond issue, and pay no part of the interest charge. By this decree the plaintiff is given exactly the same right as the owners of the wet lands which have been charged with the cost of the purchase of the system, and whose rights antedate those of the plaintiff. As has been shown in the course of this opinion, the evidence is unsatisfactory as to whether or not there was a total exhaustion of the defendant's capacity prior to the accrual of the plaintiff's alleged right. The burden of proof, as has been further said, is divided, resting in part on the plaintiff and in part upon the defendant. Under these circumstances we think the decree, in the respect indicated, is erroneous, and ignores the provisions of article 15, section 5, of the constitution, as construed by this court on the former appeal.

It follows from what has been said that the judgment must be reversed and the cause remanded. It has been twice tried, and it may be assumed that all the available evidence has been presented. We think that the plaintiff has satisfactorily established that he has received water for these lands from defendant's system, although it also appears that the water was either water primarily dedicated to the Wilson orchard at tap 75 or water not needed by prior appropriators at tap 77. We think that justice will be accomplished between the parties, and due regard given to the rights of prior consumers under the defendant's system, by the entry of a judgment requiring defendant to deliver water to the plaintiff on his compliance with the reasonable rules, regulations and charges of the defendant, and making annual application as a renter therefor, so long as there is a surplus in the canal over the amount required to satisfy the lawful requirements of users whose rights attached prior to the plaintiff's, and that the judgment should fix the duty of water at five-sevenths of an inch to the acre. The plaintiff's priority to the use of water in the ditch will date as of 1904 for 40 acres, and as of 1905 for the remaining 37 acres under cultivation, and

will take precedence over rental applications made subsequent to those dates.   If there is any conflict between the plaintiff and other users who claim rights as of 1904 or 1905, additional evidence will have to be taken to establish the exact dates of their rights, but, of course, that cannot be done in such a way as to bind them in a suit to which they are not parties.

The judgment must be *modified,* and is therefore *reversed,* with instructions to enter a judgment in accordance with this opinion.   Costs will be divided equally between the parties.

Ailshie, Presiding J., and Sullivan J., concur.

(June 7, 1911.)

## ON PETITION FOR REHEARING.

AILSHIE, Presiding J.—A petition for rehearing has been filed in this case.   The principal complaint made by the petitioner is against the order of this court fixing 1904 as the date from which the plaintiff's right to the use of water for 40 acres of his land should attach, and 1905 as the date for 37 acres, and in ordering water turned out of the canal to supply such use.

That particular part of the opinion of the court as originally announced is as follows: "The plaintiff's priority to the use of water in the ditch will date as of 1904 for 40 acres, and as of 1905 for the remaining 37 acres under cultivation, and will take precedence over rental applications made subsequent to those dates."   An examination of the original opinion will disclose that the court, among other things, said: "We think that justice will be accomplished between the parties . . . . by the entry of a judgment requiring defendant to deliver water to the plaintiff . . . . so long as there is a surplus in the canal over the amount required to satisfy the lawful requirements of users whose rights attached prior to the plaintiff's."   This is followed by the statement as to the times from which plaintiff may date his priorities, viz., "plaintiff's priority to the use of water in the ditch will date as of 1904

for 40 acres and as of 1905 for the remaining 37 acres under cultivation, and will take precedence over rental applications made subsequent to those dates.'' Now, it is at once apparent from the original opinion that the plaintiff will not be entitled to any live water direct from the canal unless there is ''a surplus in the canal over the amount required to satisfy the lawful requirements of users whose rights attached prior to the plaintiff's''; that is, prior to 1904 for 40 acres and 1905 for 37 acres. When there is not a surplus in the canal the plaintiff will be confined to waste water from the Wilson orchard waste ditch from which he had formerly received water. On the other hand, there can be no reasonable objection to, and no injustice can be worked by, allowing plaintiff to have live water from the canal in preference to persons who made application for the use of water subsequent to the dates on which the plaintiff began to receive water from the canal company and paid his water rentals therefor.

The petition does not present any new question, and, indeed, the question it raises has been fully covered, we think, in the original opinion. The petition is denied.

Sullivan, J., concurs.