KOCH, APPELLANT, *v.* COLVIN ET AL., RESPONDENTS.

(No. 8,055.)

(Submitted April 1, 1940. Decided July 17, 1940.)

[105 Pac. (2d) 334.]

*Mr. E. F. Gummer* and *Mr. J. D. Taylor*, for Appellant, submitted a brief; *Mr. Taylor* argued the cause orally.

*Messrs. Mulroney & Mulroney*, and *Messrs. Toole & Boone*, for Respondents, submitted a brief; *Mr. E. C. Mulroney* and *Mr. W. T. Boone* argued the cause orally.

HONORABLE T. E. DOWNEY, District Judge, sitting in place of MR. JUSTICE ARNOLD, disqualified, delivered the opinion of the court.

The plaintiff, an owner of a tract of land consisting of 32.6 acres in the Clinton Irrigation District, brought this action to restrain and enjoin defendants from interfering with any dam, box, gate or other device that he might use to divert and convey water from the district for use upon lands owned by him outside of the district.

The defendants filed an answer and cross-complaint. They set up the defense that plaintiff was furnished and was using all the water he could beneficially use upon his lands within the district; that he was wrongfully and without authority diverting and using water from the district upon lands owned by him outside the district; that such diversion by plaintiff so diminished the natural flow of water in the lateral and extension ditches within the district to the lands of defendants Boyd Colvin and Peter Fleming that it caused severe damages to their crops. They further allege that plaintiff was using water from the district upon four separate parcels of land outside the boundaries of the district. They asserted that he was not entitled to the use of any of the water from the irrigation district for use on the lands outside the district and that unless enjoined

and restrained he would continue to divert water from the Clinton lateral and extension ditches and that such diversion of the water would result in great and irreparable damages to the defendants. They asked that plaintiff be restrained and enjoined from using any water whatsoever from the Clinton lateral on any land other than the 32.6 acres owned by plaintiff, and that he be restrained from placing any pipe, dam, metal sheet, or other obstruction of any kind or character in the Clinton lateral for the purpose of diverting the waters therefrom to lands outside the district or from interfering in any manner with the flow of water from the Clinton lateral down to the lands of the defendants.

The cause was tried to the court without a jury, and at the close of the testimony findings of fact and conclusions of law favorable to defendants were made and filed, upon which a decree was entered. The decree by its terms enjoined and restrained plaintiff or anyone in his behalf from diverting or using any water whatsoever from the Clinton Irrigation District on lands owned by plaintiff in section 21 which were outside the district or for the irrigation of any lands other than the 32.6 acres in section 17 of the land owned by plaintiff within the irrigation district.

The essential facts as developed on the trial are as follows: The Clinton Irrigation District was duly created on September 17, 1919. At the time of the organization of this district W. E. Koch, the plaintiff, was the owner of 32.6 acres of land in section 17 which he voluntarily included within the district. It was agreed by all members of the district that the district would build the main canal from the point of diversion from the Missoula River to Smith Creek and to put in a culvert under the Northern Pacific tracks and so connect the main canal with the Clinton lateral. The Clinton lateral was built in 1921 by certain members of the district, including the plaintiff. The owners at their own expense had to provide the means of getting water to their individual lands. An extension ditch was built to the main canal and plaintiff obtained water to irrigate his lands within the district by a lateral from the extension ditch of the main canal. From this extension ditch plaintiff was

the first user, defendant Fleming the second, and defendant Willey the third.

Plaintiff Koch is also the owner of land in section 21 which was not at any time included in the district. Koch has for a number of years been using water diverted from the irrigation district for use in irrigating his lands in section 21. He did this by tapping the Clinton lateral with an eight-inch pipe. Plaintiff at this point of diversion constructed a dam and installed a sort of conveyor thereon to carry and force the water through the pipe and unto his lands in section 21, which in evidence has been referred to as the "Gaffney place." The defendants Boyd Colvin and Peter Fleming are land owners within the district and divert water from the Clinton lateral at a point below where plaintiff diverts water for the irrigation of his land in section 21. The diversion and conveyance of water from the Clinton lateral at this point decreased the natural flow of water in the extension ditch of Fleming and Willey to such an extent that in 1938, during the irrigating season, the crops on the Fleming and Willey lands lying within the district started to burn up because they were not receiving sufficient water for the irrigation thereof. Boyd Colvin and Peter Fleming removed the dam built by Koch at the point of diversion and he thereupon instituted this action.

The evidence further disclosed that plaintiff was diverting water of the Clinton Irrigation District on four different tracts of land outside the district and at the same time was using all the water he could beneficially use upon his land within the district. The question for determination is, "May a land owner within an irrigation district use all of the water he can beneficially use upon his land within the district and in addition use water from said district upon lands owned by him outside the district?"

It is plaintiff's contention that under the provisions of section 7202 of the Revised Codes of Montana 1935, he, as a water owner within an irrigation district, has the right to assign any of the water apportioned to him and not required for use upon the land to which said water is apportioned and use the

same upon land lying beyond the boundaries of the irrigation district.

Section 7202 provides: ''The Board of Commissioners shall apportion the water for irrigation among the lands in the district in a just and equitable manner and, the maximum amount apportioned to any land shall be the amount that can be beneficially used on said land, and such amount of water shall become and shall be appurtenant to the land and inseparable from the same, but subject to reduction as hereinafter provided; provided, however, that any water owner of the district shall have the right to sell or assign for one season any of the water apportioned to him, and not required for use upon the land to which such water belongs;'' etc.

This section clearly provides that an owner of land within a district is entitled to such an amount of water as will adequately irrigate the lands within the district which can be irrigated, and not upon all land therein without regard to irrigability. Therefore the fact that plaintiff may have irrigated but twelve or fifteen of the acres included within the 32.6 acres owned by him does not necessarily mean that he is entitled in addition to the amount which would be required to irrigate the balance of his 32.6 acres. The Board of Commissioners of said district under section 7202 are bound to apportion in a just and equitable manner to all land owners within the district the maximum amount which each can beneficially use upon his lands within the district. When they have so apportioned and allotted the water they have performed their full duties in this respect.

Plaintiff bases his right to divert the water from the district for use upon lands outside the district upon the proviso contained in section 7202. That plaintiff under the facts in this case is not entitled to assign any of the water apportioned to him, is, we think, very apparent. Fleming and Willey, as land owners within the irrigation district, were legally entitled to a sufficient amount of water to beneficially irrigate their lands within the district. They were supplied by the board and apportioned sufficient water for this purpose and were using the water for the successful irrigation of their lands until the amount of water was materially reduced by the action of the plaintiff

in constructing the dam and diverting the water by means thereof. Fleming and Willey as land owners within the irrigation district had vested interests therein and in particular had vested interests in and to the use of the water being supplied and apportioned to them, and an interference with its use certainly was depriving them of their vested rights in the water to which they were legally entitled. Plaintiff by his action in diverting this water usurped and assumed powers that were not vested even in the Board of Commissioners of the district.

In the case of *Yaden et al.* v. *Gem Irr. Dist.*, 37 Idaho, 300, 216 Pac. 250, which was an action to obtain a writ of mandate to compel the district to deliver water to plaintiff's land outside of the district and to recover damages for loss of crops as a result of the district's failure and refusal so to do, the court denied the writ upon the following facts: Plaintiff owned land outside of the district. She had been supplied with water on the land for a number of years by reason of the fact that there was an abundance of water for all lands within the district and because the district lateral and syphon had been constructed over her lands to lands which had been, but were not then, within the district. At some time before the action other lands had been admitted into the district and all waters were needed to irrigate lands within the district. The evidence disclosed that if plaintiff were allowed to continue to irrigate her land from water within the district the lands within the district would be damaged thereby. The court said: "The ultimate purpose of a district's organization, under the provisions of the statutes of this state, is the improvement, by irrigation, of lands within the district. The purpose of this organization is not rental, sale or distribution of water. It is authorized to acquire the right to the use of water for the purpose of delivery to settlers within the district. To bond the lands of the settlers within the district to acquire the right to the use of water, and then to deprive them of such right in order that it may be furnished to lands without the district would clearly be taking property of the landowners within the district without due process of law."

From the pleadings and evidence herein there is no testimony or claim that the plaintiff was not furnished sufficient water for the beneficial use of all the land owned by him susceptible to irrigation within the district. The evidence in this case further discloses that plaintiff never at any time, as he had a right to do, petitioned to decrease the amount of his irrigable acreage within the district, nor did he at any time petition to include within such district the lands owned by him in sections 21 and 16.

In *Maclay* v. *Missoula Irr. Dist. et al.*, 90 Mont. 344, 3 Pac. (2d) 286, the court in the course of its opinion held, ''Certainly, a district with the power only to manage the affairs of the irrigation system, charged with the duty of equitably distributing the waters thereof to the numerous owners of lands and water rights within its borders, can neither consent to the taking, nor be compelled to distribute waters of the system for use on lands outside the district and to which they are not appurtenant, when such use deprives those having vested rights in the waters, of water to which they are legally entitled, and when the use of the rights, used outside the district, would have no such effect if used upon the lands to which they are appurtenant.''

This holding follows that in the Idaho case quoted herein, and the plaintiff in invoking the provisions of section 7202 of the Revised Codes of Montana, 1935, as his authority for the appropriation of water from the district for use upon lands outside of the district misinterprets the language therein used. From all of the evidence introduced in this case it clearly appears that plaintiff, during all of the time he was diverting and using water outside the district, was also furnished and was using all the water he could beneficially use upon lands owned by him within the district. It further appears that there is not one scintilla of evidence that the land owned by plaintiff within the district was left lying idle or not irrigated during any of the years or at any of the times pertinent to the facts in this case. We therefore hold that plaintiff, being supplied and using within the district all of the water which he could beneficially

use upon his lands therein, had nothing to assign and therefore the question of the right of assignment as contained in section 7202 is not herein passed upon.

It is the opinion of this court that the plaintiff, Koch, in using and diverting the water from the Clinton Irrigation District on lands outside the district, was acting wrongfully and without any right or authority and, as the facts disclosed, was thereby irreparably injuring owners within said district and depriving them of water in which they had a vested right. We therefore hold that the district court in granting a permanent injunction against the plaintiff prohibiting and restraining him from using any of the water of the Clinton Irrigation District upon any lands other than that owned by him within the district ruled correctly, and the judgment of the trial court is hereby affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Erickson and Angstman concur.

Rehearing denied September 18, 1940.