269 F.2d 755

JENSEN et ux.

v.

BOISE–KUNA IRR. DIST.

No. 7967.

Supreme Court of Idaho.

April 5, 1954.

134

Maurice H. Greene, Boise, George W. Grebe, Kuna, for appellant.

Edwin Snow and Walter M. Oros, Boise, for respondents.

TAYLOR, Justice.

For several years prior to 1946, water had been accumulating upon and under certain lands within the defendant district (appellant) in and adjacent to what is known as Thomason Lake. This accumulation consisted of seepage and waste water resulting from the irrigation of other lands in the district, and had reached such an extent that valuable farm lands were inundated or

bogged and rendered unfit for farming. The district had recognized liability for damages to certain owners of these lands and other claims for damages were threatened. Plaintiffs (respondents) who are husband and wife, were owners of some of the damaged land. On November 8, 1946, the directors of defendant district adopted a resolution authorizing the district to contract with the plaintiffs for the removal of the surplus water from the lake. Accordingly, on November 12, 1946, two contracts were executed, identical in terms, except that one is made with Rex S. Jensen, providing for 6.4 second feet of water and the other with Roxy C. Jensen, providing for 4 second feet of water. These contracts contain the following provisions:

"Whereas, Thomason Lake is fed by drainage wells, springs, seepage waters and waste waters from lands within the Boise Kuna Irrigation District, which accumulates in the said lake in such quantity that the lake water is covering valuable farm land and causing the district and the Boise Project to pay large annual damage claims;

"Whereas, the party of the second part desires to enter into a contract with the party of the first part to pump water out of Thomason Lake and relieve the first party and the Boise Project of liability for further damage, and in lieu of a money consideration agrees to accept for such drainage service an agreement on the part of the party of the first part, that water in amount sufficient to allow the patry of the second part to pump 6.4 second feet during the irrigation season will be diverted into said lake;

"Whereas, the party of the second part does hereby agree to transfer by deed to the party of the first part a Cruzen Water Right, granting to the holder thereof the right to 100 inches continuous flow from the Boise River, in order that the party of the first part may augment the flow into Thomason Lake in the event that the drainage waters flowing therein should fall below 6.4 second feet pumping requirement.

"Now Therefore, in consideration of the premises, the party of the first part hereby agrees to allow drainage, seepage, spring and waste waters arising within the district to flow into the said Thomason Lake in sufficient amount to permit the party of the second part to pump 6.4 second feet continuous flow from said lake during each irrigation season subsequent to the execution of this contract, and in the event that the said drainage waters shall fall below said amount, the party of the first part agrees to augment said flow by water from other sources including pumping from existing wells, drilling of additional wells or construction of drainage ditches if necessary. The delivery of water as above stipulated shall be subject to and limited by unavoidable ac-

cident, canal breaks or other factors limiting canal capacity, drouth and such other limitations as lands within the district are subject to.

"The party of the second part, in consideration of the delivery of such water by the party of the first part, agrees to assume and pay all claims for damage to lands within the district caused by overflow waters of Thomason Lake."

At the time, plaintiffs were the owners of 860 acres of land lying outside of, and adjacent to, the irrigation district and in the vicinity of Thomason Lake. They obtained permits for the appropriation of the water from the lake and, in reliance upon the contracts, and at great expense, they installed a pumping plant, pipe line, distributing system and leveled and corrugated this land outside the district, in order to effect its irrigation by use of the water accumulating in Thomason Lake and vicinity. By this means they farmed and irrigated a part of these lands in the years 1948 and 1949.

In 1949 the water available in the lake fell below the 10.4 second feet contracted for and plaintiffs made demand upon the defendant that it increase the supply by one or more of the means mentioned in the contracts. Except for some experimental work and pumping tests, early in the irrigation season of 1949, the plaintiffs' demands were not met. In 1950 the water available to the plaintiffs again fell below the amount contracted for and during part of that season there was no water at all available.

This action was brought by the plaintiffs for damages resulting to their crops. In addition to alleging the failure of the defendant to perform as required by the contracts, the plaintiffs allege that in January 1950 the defendant, by resolution of its board of directors, granted to the Reynolds Creek Irrigation District permission to drill wells on lands within the boundaries of defendant district and to take water therefrom for use upon lands within the Reynolds Creek Irrigation District; the resolution recites that the permit was granted for the purpose of accomplishing the removal of excess water from lands within the defendant district and in the area where the wells were to be drilled; that the Reynolds Creek Irrigation District pursuant to such resolution drilled three wells in the designated area (which is some two miles distant from Thomason Lake); that the flow from these wells depleted and destroyed the flow of drainage and seepage water into Thomason Lake.

The defendant moved to strike this part of the complaint on the ground that the facts alleged are immaterial to plaintiffs' cause of action. The court's denial of this motion is assigned as error. The allegations are regarded as a pleading of evidence, which would be admissible under plaintiffs' general allegation that defendant failed to perform its contract; specifically that it failed to do what it could do to make available the water contracted for and, on the.

contrary, knowingly permitted water which would have flowed or seeped into Thomason Lake to be drawn off elsewhere. See Frost v. Chaplin Motor Co., 138 Me. 274, 25 A.2d 225, 139 A.L.R. 1144.

In its answer, the defendant set up several affirmative defenses, some of which were stricken on motion of the plaintiffs. In its amended answer defendant pleads supplemental agreements entered into between the parties, December 15, 1947, for the purpose of clarifying the contracts pleaded by the plaintiffs. The effect of these supplemental agreements is to allow plaintiffs to pump water from Thomason Lake during the winter season to avoid overflow, and to develop water additional to the amount contracted for, by drilling of wells on their own land, and, providing that none of the water thus withdrawn or developed was to be considered a part of the 10.4 second feet to be made available by the defendant "except when necessary to use said water to make up the deficiency in periods of drouth when the available supply of seepage and waste waters from the district fail to make up the required amount."

As a first affirmative defense the defendant alleges that it has allowed all available surplus water, seepage and waste, not required for irrigation of lands within the district, to flow into Thomason Lake during the irrigation season of 1950; commencing in June, 1950, a period of drouth began and extended through the rest of that irrigation season; that by reason of the drouth and the resultant increase in the amount of water required to properly irrigate the lands within the district, the defendant was required to, and did, utilize the full extent of its canal capacity in delivering water to lands within the district, by reason of which it was impossible to deliver the normal supply of waste and seepage water to Thomason Lake; that including the water flowing to Thomason Lake during the non-irrigation season, and the flow that did reach the lake during the irrigation season, there was a total amount made available to the plaintiffs sufficient to meet the requirements of the contracts for the year 1950, and plaintiffs' shortage was due to their own failure to store, properly care for, and utilize the water available.

In its second affirmative defense the district alleges that during the year 1950 in cooperation with the plaintiffs it drilled an additional well, additional test holes, and made pumping tests to increase the flow of seepage and waste water into Thomason Lake; that it was prevented from doing additional pumping from existing wells because it was unable to secure a right of way to the wells for a power line in time to augment the flow during the remainder of that season; that it could not meet plaintiffs' demand for the deepening of its drainage ditch leading to Thomason Lake because it was required to supply water from that ditch to approximately 170 acres of land within the district; and that the water in the drainage ditch had to be checked

up to a level from which it would flow into the lateral supplying those lands.

The cause was tried to the court without a jury and after making findings and conclusions, the court entered judgment against the defendant for damages in the sum of $14,910.05. The defendant concedes that the evidence, though conflicting, is ample to sustain the findings with respect to the amount of damage. The errors assigned relate to other issues.

One of the affirmative defenses stricken from the original answer alleges the contracts were ultra vires. This ruling was erroneous. The defense of ultra vires is available in a proper case, and must be pleaded. Meholin v. Carlson, 17 Idaho 742, 107 P. 755; Land Development Corp. v. Cannaday, 74 Idaho 233, 258 P.2d 976; 19 C.J.S., Corporations, § 981 b. The same question is also presented by the ruling on defendant's demurrer to plaintiffs' complaint. These assignments require a consideration of the functions and powers of an irrigation district.

"Irrigation districts are creatures of the statutes. They are quasi public or municipal corporations, and as such have only such power as is given to them by statute, or such as is necessarily implied. * * *

"Under the provisions of C.S. § 4350 [§ 43–316, I.C.], the legal title to all property acquired by the district by operation of law vests immediately in the district and is held in trust for, dedicated to, and set apart to the use and purposes provided by law. Under the provisions of C.S., §§ 4346 and 4355 [§§ 43–304 and 43–322, I.C.], the power of the directors or other officers of an irrigation district is limited, and any act done in excess of the express or implied provisions of the statute by such directors or other officers is ultra vires. However, the foregoing provisions of the statutes do not prohibit the delivery of water to users outside of the district when the same is not needed by users within the district. * * * The appropriation and diversion of waters by the district, through its officers, or the purchase of a system constructed in whole or in part by its funds, becomes the property of the district, and is held in trust for the landowners within it, and no burden can be imposed upon it for the delivery or maintenance of canals or laterals for the delivery of water beyond the boundaries of the district, and no contract made by the directors of a district to deliver water beyond its boundaries is a liability for which the district can be held. * * * all persons dealing with the directors or officers of the district are bound to take notice of the various enactments conferring authority upon the directors or officers of the district and the limitation of their powers." Yaden v. Gem Irr. Dist., 37 Idaho 300, at pages 308, 309 and 310, 216 P. 250, 252.

The characterization of an irrigation district as a quasi-municipal corporation was somewhat modified in the case of Lewiston Orchards Irrigation District v. Gilmore, 53 Idaho 377, 23 P.2d 720, where it was said:

"* * * an irrigation district is a public corporation having such incidental municipal powers as are necessary to its internal management and the proper conduct of its business. Its primary purpose is the acquisition and operation of an irrigation system as a business enterprise for the benefit of landowners within the district, such property being held in trust for them in a proprietary capacity, while secondarily and incidentally certain municipal powers have been conferred for its government and regulation * * *." 53 Idaho at page 382, 23 P.2d at page 722.

"An irrigation district is a public quasi corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits. * * * It is, in the administration of its business, the owner of its system in a proprietary rather than in a public capacity, and must assume and bear the burdens of proprietary ownership." City of Nampa v. Nampa, etc., Irr. Dist., 19 Idaho 779, at page 787, 115 P. 979 at page 982. Stephenson v. Pioneer Irr. Dist., 49 Idaho 189, 288 P. 421, 69 A.L.R. 1225.

"Any irrigation district heretofore organized or hereafter to be organized, may, whenever it appears necessary, proper or beneficial to drain any of the lands within said district, whether for the benefit of the land actually requiring drainage or for the protection of other lands within said district, whether the irrigation works have been actually acquired or constructed or not, cause drainage canals and works to be constructed and to this end such district shall in all respects have the same power and authority as is now conferred or may hereafter be conferred respecting irrigation, and all the powers conferred upon irrigation districts under the laws of this state with respect to irrigation shall be construed to include drainage.

"Any irrigation district now, or which may hereafter be organized under the laws of the state of Idaho, shall have the authority to construct drainage works for the purpose of draining any land or lands within such irrigation district, and such authority shall be exercised by the board of directors in its discretion. * * *" § 43-305, I.C.

■ The incorporation, by reference, of powers of the district applicable to irrigation, includes the general powers set forth in § 43-304, I.C., which specifically includes the power to "make and execute all necessary contracts". From these provisions it is clear that the subject matter of the con-

tracts which the district made with the plaintiffs is not ultra vires. The contracts by their terms identify the water to be made available to the plaintiffs as "seepage waters and waste waters." Hence, no attempt was made by the directors to obligate the district to deliver or make available to the plaintiffs any of the water or water rights owned by the district, and available, appurtenant and dedicated to lands within the district. The only other water mentioned in the contracts is the 100 inches of Cruzen water right deeded to the defendant by the plaintiffs "in order that the party of the first part may augment the flow into Thomason Lake in the event that the drainage waters flowing therein should fall below" the 10.4 second feet. As to this water, the district acquired title burdened with the obligation expressed in the contracts and was therefore required to make that water available to the plaintiffs whenever the expressed contingency arose. Gerber v. Nampa, etc., Irr. Dist., 19 Idaho 765, 116 P. 104; Yaden v. Gem Irr. Dist., supra; Nampa & Meridian Irr. Dist. v. Briggs, 27 Idaho 84, 147 P. 75; Adams v. Nampa & Meridian Irr. Dist., 73 Idaho 521, 254 P.2d 407.

Appellant also assigns as error the following finding:

"That the seepage and waste water so accumulated in Thomason Lake and in that vicinity and causing damage to the lands of the district as aforesaid, were in all respects surplus and waste waters and not needed or available by the dis-

trict for the irrigation of any of the lands within the district; that the said defendant district, prior to the making of the contracts herein sued upon, certified and represented to plaintiffs that said water was surplus, waste and abandoned water of the district; and it is estopped to deny in this action the facts so certified and represented to plaintiffs."

█ As held by this court, and as expressly provided by § 43-316, I.C., the title to all property acquired by an irrigation district, including its water rights, is vested in the district and held by the district in trust for, and dedicated and set apart to, the uses and purposes set forth in the law. Yaden v. Gem Irr. Dist., 37 Idaho 300, 216 P. 250; Colburn v. Wilson, 23 Idaho 337, 130 P. 381.

█ It follows that any water owned by the district and thus dedicated to the irrigation of lands within the district, cannot be supplied to lands outside the district so long as it is needed for the proper irrigation of lands within the district. The officers of the district have no power to contract for the delivery or supplying of such water for use outside the district. Any contract attempting to create or impose an obligation on the district to supply or make available any such water for any such purpose is ultra vires and void. It also follows that any attempt by the directors of the district to create such an obligation cannot be made

142

the basis of estoppel against the district. Otherwise, the will and purpose of the legislature, and the public policy established by its dedication of such water to the lands within the district, could be defeated by ill-advised contracts of the directors. The court was, therefore, in error in holding that the defendant is estopped to deny that the water to be made available to the plaintiffs was all surplus and waste and not needed by, or available to, the district for irrigation of any of the lands therein. The error, however, is technical only, because the finding in which it occurs refers only to seepage and waste water accumulating in Thomason Lake, all of which the record shows to be actually surplus and waste, and not available for irrigation of the district lands. The water used for irrigation of the 170 acres within the district, heretofore mentioned, is taken out of the drainage ditch before it reaches Thomason Lake and hence is not to be confused with the waters referred to in the finding. There was no occasion to invoke an estoppel as to the waters referred to in the finding, because the defendant is not claiming such to be other than surplus and waste. Supporting our conclusion that a contract, which would obligate an irrigation district to deliver any dedicated water for use outside the district is ultra vires and void, and that estoppel cannot be invoked in aid of such a contract, are the following authorities: Jenison v. Redfield, 149 Cal. 500, 87 P. 62; Maclay v. Missoula Irr. Dist., 90 Mont. 344, 3 P.2d 286; Koch v. Colvin, 110 Mont. 594, 105 P.2d 334; School Dist. No. 8 in Twin Falls County v. Twin Falls, etc., Ins. Co., 30 Idaho 400, 164 P. 1174; Deer Creek Highway Dist. v. Doumecq Highway Dist., 37 Idaho 601, 218 P. 371; Lloyd Crystal Post No. 20, The American Legion v. Jefferson County, 72 Idaho 158, 237 P.2d 348; Worlton v. Davis, 73 Idaho 217, 249 P.2d 810; State v. Northwest Magnesite Co., 28 Wash.2d 1, 182 P.2d 643; 31 C.J.S., Estoppel, § 141.

■ Appellant also attacks the contracts in question on the ground that they violate § 43–322, I.C., and § 3, Art. 8, of the constitution. Section 43–322 authorizes the issuance of warrants by the directors to defray expenses of care, operation, repair, and improvement of the works of the district, "not to exceed the district's anticipated revenue." No showing was made which would necessitate a finding that the expense required by the contract would exceed the district's anticipated revenues. The constitutional provision referred to in part provides that "No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, * * *". An irrigation district is not a municipality such as referred to in this section, and, further, the section contains a proviso that it is not to be applied to "the ordinary and necessary

expenses authorized by the general laws of the state." The expenses of drainage operations are such as contemplated by the proviso.

■ Appellant also urges that the contracts violate § 4 of Art. 8 of the constitution. This section also has reference to municipalities and subdivisions of the state, and forbids such to "lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual * * *." A contract, such as those involved, based upon a valid and sufficient consideration, to pay to an individual an obligation which the district may lawfully incur, is not a lending or pledging of the credit or faith of the district.

The contracts being valid, the remaining question is whether the record supports the judgment thereon. The court properly found that the work and testing done jointly by the parties (referred to in the second affirmative defense) in an effort to increase the flow to Thomason Lake, was done in 1949. The contracts require the district to "augment the flow from other sources including pumping from existing wells, drilling of additional wells or construction of drainage ditches if necessary." With the exception of the one additional well drilled in 1949, none of these things were done either in 1949 or 1950.

As to the first affirmative defense of drouth and want of canal capacity, the applicable provision in the contracts is: "The delivery of water as above stipulated shall be subject to and limited by unavoidable accident, canal breaks or other factors limiting canal capacity, drouth and such other limitations as lands within the district are subject to." Had the district dug additional wells, constructed additional drainage ditches, and resorted to pumping in a bona fide effort to make the water available, and then failed to supply the water because of drouth or want of canal capacity, its defense would have been complete. This is so because as heretofore stated it could not in any event be compelled to supply any of the dedicated water of the district to the performance of its contracts with plaintiffs. As it is, the defendant, having failed to do what it agreed to do, and what it could have done to supply the water, its defense fails.

■ Appellant assigns the ruling of the court permitting the witness Tucker, a civil engineer, to give his opinion that "There was some connection in the underground water between these two wells." The wells referred to being the wells from which water flows into Thomason Lake and the wells drilled by Reynolds Creek Irrigation District in another area. The engineer had made measurements of flow before, at the time of, and subsequently to the uncapping of the Reynolds wells, and the comparative elevations of the two areas. The admission of opinion evidence is largely discretionary with the trial court. 3 Am.Jur., Appeal & Error, §§ 1036 and 1037. Its weight and effect is for the trier of the

facts, in this case the trial judge. No special qualification of the witness was shown except those noted above. The whole issue of the effect of the Reynolds wells was collateral, going only to defendant's ability and willingness to perform its contract. Presumably if the Reynolds wells did draw water away from the Thomason Lake area, it could have been restored by pumping at the wells there as agreed. Since this was not done, the ruling becomes unimportant because the judgment is amply supported by the failure to perform, and no prejudice results from the admission of the opinion.

 Also assigned is the ruling permitting defendant's witness Carter to answer on cross-examination an hypothetical question eliciting an opinion that the flow from the Reynolds wells affected the flow from the wells at Thomason Lake. The objection was that it was not proper cross-examination, was a part of plaintiffs' case in chief, and that the question did not include all material facts necessary to such an opinion. The witness was shown to be well qualified and familiar with the area involved. This is also a matter largely left to the discretion of the trial judge. 3 Am.Jur., Appeal & Error, §§ 976, 1036 and 1037. We find no prejudice to appellant from the ruling.

The judgment is affirmed. Costs to respondents.

PORTER, C. J., THOMAS, J., and Mc-QUADE, D. J., concur.

KEETON, Justice (dissenting).

In my opinion the powers of the directors of the defendant irrigation district as expressly provided by statute cannot be construed to encompass the contract in dispute here. The liability attempted to be here created, if followed to its logical conclusion, could, in my opinion, confiscate the property of the land owners in the district.

I consider the contract in question ultra vires and void. What the rights of the plaintiffs might be because of moneys expended in furtherance of the obligations assumed is not before us for determination. Irrigation district directors have only such powers as are conferred upon them by statute or necessarily implied from those expressly conferred, and such powers do not encompass the liability here attempted to be assumed. The contract violates Secs. 43–304 and 43–322, I.C. Hence the judgment should be reversed.