CLYDE F. FROST *vs.* CHAPLIN MOTOR COMPANY.

Cumberland.    Opinion, March 3, 1942.

*Philip F. Thorne,* Portland, for plaintiff.

*Franklin R. Chesley,* Portland, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORS-TER, MURCHIE, JJ.

WORSTER, J. On exceptions to the acceptance of the report of the referee, who heard the case under a rule of reference issued out of the Superior Court, with the right of exceptions reserved on questions of law.

It is a general rule that findings of fact by a referee are final and conclusive, if supported by evidence of real worth and probative value. But, if there is no evidence to support them, or if the only inference to be drawn from the existing facts does not support the conclusion reached by the referee, then his decision is erroneous as a matter of law, and exceptions will lie to the acceptance of his report, if objection thereto is properly and seasonably made, as was done in the case at bar.

The material facts are not in dispute here, and so the question presented is whether the ruling of the referee was erroneous as a matter of law. We think it was.

In appears that sometime in the early part of the forenoon, on February 15, 1941, the plaintiff delivered to the defendant, the Chaplin Motor Company, at its garage, his automobile, with instructions, in substance and effect, to lubricate it and have it ready for him around noontime of that day. The defendant received the automobile upon those terms, and then accepted in payment for the lubrication to be made, a coupon from a book of coupons, which it had previously sold to the plaintiff, on credit. After the automobile had been lubricated, but before the plaintiff returned for it, the Chaplin Motor Company, without any change having taken place in the contractual relationship of the parties, caused the automobile to be attached at 11:15 A.M., on that day, in an action brought by it against the plaintiff on an old account. Afterwards, on the same day, the plaintiff demanded his automobile of the defendant. The latter refused to redeliver it. Five days later the plaintiff obtained it by giving the bond required by law to dissolve attachments of personal property. In this action, the plaintiff seeks to recover damages alleged to have been suffered by him because of the failure of the defendant to redeliver the automobile to him, on demand.

The delivery of the automobile to the defendant as aforesaid constituted a bailment. But the defendant contends, in effect, that notwithstanding the fact that the bailment had not been terminated, it had the statutory right to attach any non-exempt property of the plaintiff, including this automobile, then held by it as bailee, and, having caused the automobile to be attached, was excused from redelivering it to the plaintiff until such bond was given. The referee found for the defendant.

"As a general rule a bailee may show, as an excuse for failure to redeliver, that the property was taken from his possession under process of law, provided he had done all that is required of him to protect his bailor's interest. . . ." 6 Am. Jur., page 225.

In this case, however, the automobile was not *taken from* the possession of the bailee, in the sense in which those words are used in the above quotation, but, on the contrary, it was *taken for* the benefit of the bailee, at its express direction, to satisfy any judgment and costs which it might recover against the bailor in an action brought against him on an old account, unconnected with the bailment.

Moreover, redelivery of the automobile was not impossible. The bailee could have discharged the attachment at any time (*Wheeler et al.* v. *Nichols*, 32 Me., 233, at 240; see, also, *Bachelder et al.* v. *Perley et al.*, 53 Me., 414), and then redelivered the automobile to the bailor, as required by the terms of the bailment.

A bailment is defined in 6 Am. Jur., page 141, as follows:

"In its ordinary legal signification, which conforms to modern authorities and is substantially accurate, the term may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."

But, even if a bailment cannot be considered a trust, in the technical sense of that word (see discussion in 6 Am. Jur., page 184 *et seq.*) yet, nevertheless, the Chaplin Motor Company cannot excuse or justify its own voluntary breach of its unconditional contract to lubricate and redeliver the automobile to the plaintiff, at the garage, on demand, merely by showing that said company, itself, had caused the automobile to be attached on a writ sued out by it against the plaintiff on an old account.

"There is no principle of law better settled than that a breach by the promissor of his unconditional contract lawfully entered into is not to be excused by any act of his own or those in privity with him which prevented or rendered impossible the performance of his agreement." *Buchanan et al. v. Louisiana Purchase Exposition Co. et al.*, 245 Mo., 337, 149 S. W., 26, at page 28.

Indeed, in the circumstances of this case, the claim of the Chaplin Motor Company to the right to attach this automobile, during the bailment, is so utterly inconsistent with and contrary to its contractual duty and undertaking, as bailee, to lubricate and redeliver the automobile to the bailor, at the garage, on demand, that it must be considered that at the time of receiving the automobile, for the purpose aforesaid, the Chaplin Motor Company impliedly waived the right to cause such attachment to be made, during the bailment. And, having obtained possession of the automobile, on such implied waiver, the defendant is now estopped from setting up and relying upon such attachment as an excuse for the breach of its contractual duty to redeliver the automobile to the plaintiff.

This conclusion renders it unnecessary to consider the cases cited in the briefs and in the report of the referee.

The decision of the referee in favor of this defendant was erroneous as a matter of law, and the order of the presiding justice, accepting the referee's report, must be set aside.

*Exceptions sustained.*