*765
 
 DELAHANTY, Justice.
 

 The District Court (District VIII) ordered a judgment of $800 in favor of Patrick A. Levasseur, Jr., plaintiff, for damages arising out of the storage of his boat on premises owned by the defendant, Eugene R. Field. Defendant appeals from a decree of the Superior Court (Androscog-gin County), which sustained the order of the District Court. We deny the appeal insofar as it relates to defendant’s liability. As to damages, we order a remittitur.
 

 The facts found by the District Court, based on the testimony adduced before it, described the following events. In December, 1965 plaintiff and defendant agreed that plaintiff could store his boat, motor, and trailer in a building owned by defendant and within sight of defendant’s home. Plaintiff paid to defendant a $10 fee to cover storage until the following spring. Plaintiff expressed some doubts about the soundness of the building, particularly concerning the structure of the roof, but defendant assured him that the building was safe. On January 30, 1966, after an accumulation of snow during a storm, the roof collapsed, damaging plaintiff’s boat. The District Court concluded as a matter of law that a bailment contract existed between plaintiff and defendant, that defendant had breached the contract by returning the bailed goods in a damaged condition, and that the facts regarding the condition of the building and the accumulation of snow constituted negligence on the part of defendant-bailee.
 
 [1]
 

 Defendant’s appeal assigns error to the final judgment of the District Court as follows:
 

 (1) that he owed plaintiff no duty;
 

 (2) that his conduct was not negligent;
 

 (3) that regardless of defendant’s conduct, plaintiff had assumed the risk of damage to his boat; and
 

 (4)that the damages charged to defendant’s conduct are unsupported by the evidence.
 

 There is no doubt that plaintiff’s delivery and defendant’s acceptance of personal property for temporary storage on defendant’s premises established a bailment. See Frost v. Chaplin Motor Company, 138 Me. 274, 277-78, 25 A.2d 225, 226 (1942). A bailee is not an insurer against the loss of the bailed goods. Levesque v. Nanny, 142 Me. 390, 392, 53 A.2d 703, 704 (1947); see Sanford v. Kimball, 106 Me. 355, 357-58, 76 A. 890, 891 (1910). However, the bailment relationship imposes on the bailee a duty of ordinary care which if breached will expose him to liability for negligence. See Briggs Hardware Company v. Aroostook Valley R. R., 117 Me. 321, 324, 104 A. 8, 9 (1918). In the absence of an agreement which may modify the bailee’s duty, a bailee will not be held liable unless the loss or damage is attributable to his failure to exercise due care, and the bailee’s negligence must be proved by the bailor. Id. at 324, 104 A. at 9;
 
 Sanford,
 
 supra, 106 Me. at 357, 76 A. at 890—91; Mills v. Gilbreth, 47 Me. 320, 326 (1860).
 

 The early cases held that when the bail- or proves the bailment and a failure to return the bailed goods on demand, or a return in damaged condition, the bailor has made out a prima facie case of negligence, and the burden of going forward devolves upon the bailee to explain the circumstances attending the loss or damage.
 
 Sanford,
 
 supra, 106 Me. at 357-58, 76 A. at 891;
 
 Mills,
 
 supra, 47 Me. at 326. In more recent years, this Court held that the bail- or’s prima facie case, made out by a showing of loss or damage of the bailed property, gives rise to a presumption of bailee negligence. Northeast Aviation Co. v. Rozzi, 144 Me. 47, 48, 64 A.2d 26 (1949).
 

 When the bailee’s burden of going forward in response to the bailor’s,
 
 *766
 
 prima facie case is characterized as a response to a presumption of negligence, special procedural considerations apply, according to the Maine law governing rebut-, table presumptions. A presumption is not evidence itself. Rather, it is a procedural 'device designed to assist the proponent of a particular fact, here, the bailor’s claim of' bailee negligence. The mandatory effect of a presumption requires a finding for the bailor unless the bailee comes forward with evidence sufficient to rebut the presumption that the bailee has negligently caused the loss or damage. The presumption will persist until the contrary evidence persuades the factfinder that the balance of probabilities is in equilibrium or, stated otherwise, until the evidence satisfies the factfinder that “it is as probable that the presumed fact does not exist as that it does exist.” Hinds v. John Hancock Ins. Co., 155 Me. 349, 364, 155 A.2d 721, 730 (1959). The
 
 Hinds
 
 rule gives to the presumption i0self maximum coercive effect short of shifting the ultimate burden of persuasion to the opponent. But the burden of persuasion does not shift, and if the bailee persuades the factfinder that the probabilities as to negligence are in equilibrium, the mandatory effect of the presumption will disappear. Thereafter the issue will be whether the bailor has carried the burden of persuasion, as to bailee negligence, upon the whole evidence without the aid of the presumption. See Hann v. Merrill, Me., 305 A.2d 545, 552-53, 554-55 (1973); Metcalf v. Marine Colloids, Inc., Me., 285 A.2d 367, 368 (1972).
 

 Presumptions as treated in
 
 Hinds
 
 and applied in subsequent cases do not substantially alter the burden of persuasion and the burden of going forward, as these burdens pertain to the parties in bailment cases. As we have already stated, the ultimate burden of persuasion rests on the bailor, as to the issue of negligence. However, when the bailor makes a prima facie case of loss or damage of the bailed goods, the presumption of bailee negligence arises, and the burden of going forward shifts to the bailee. Prior Maine cases leave unclear the exact duty charged to the bailee in order to carry his burden of going forward to rebut the presumption of negligence. It has been held that the bailee must disclose fully all the facts and circumstances relating to the loss or damage. See
 
 Mills,
 
 supra, 47 Me. at 326. But in a later case, where a bailee having custody of a horse simply could not explain how the animal received a fatal cut in the leg, it was held that the bailee only had to explain the circumstances and to give the reason why the horse was not returned.
 
 Sanford,
 
 supra, 106 Me. at 357-58, 76 A. at 890-91. The bailee’s showing of the loss of the property by fire or theft, or its injury by accident or otherwise, was deemed a sufficient explanation to put the bailor to his burden of affirmatively showing that the bailee had been negligent. Id.
 
 Sanford
 
 apparently reasoned that the bailee’s explanation, however bare, had described the factual character of the bailee’s care, arid that the issue whether the bailee’s conduct amounted to negligence was properly a jury question. See id. at 358, 76 A. at 891. Similar language in Levesque v. Nanny, supra, 142 Me. at 392, 53 A.2d at 704, disavowing the liability of a bailee for a loss that simply cannot be explained, may be distinguished in that the plaintiff-bailor there had failed to establish the facts of a bailment or of a prima facie case.
 

 This Court summarized the existing Maine law in
 
 Northeast Aviation,
 
 supra, when it stated that upon bailor’s establishing the prima facie case of negligence, “[i]t then becomes the duty of the bailee, whose knowledge of the loss or damage is presumed from his possession, to explain the cause or at least to show that it happened without his fault.” 144 Me. at 48, 64 A.2d at 26 (dictum). This rule may not be as stringent as in those jurisdictions which require the bailee to come forward with affirmative evidence of due care. See Annot., 44 A.L.R.3d 171 (1972); Annot., 43 A.L.R.3d 607 (1972). Still, to exonerate the bailee from liability, it would appear that any explanation of loss or damage, or any showing that loss or dam
 
 *767
 
 age occurred without fault, would in most cases be tantamount to a showing that the loss or damage of the bailed goods occurred under circumstances consistent with the exercise of due care by the bailee. Whether the bailee’s conduct on the facts amounted to negligence would be a primary question for the factfinder.
 
 Sanford,
 
 supra, 106 Me. at 358,
 
 76
 
 A. at 891. Any explanation offered by the bailee in rebuttal of the presumption of negligence would ordinarily be subject to a jury determination as to credibility. See Portland Flying Service, Inc. v. Smith, Me., 227 A.2d 446, 448 (1967).
 

 Turning to the facts presented in the case before us, we must sustain the findings of fact and conclusions of law of the District Court. The agreement to store plaintiff’s boat on defendant’s premises was plainly a bailment contract. Testimony bearing on the delivery of the goods to the bailee, their acceptance by the bailee, and the bailee’s failure to return them in good condition, all supported a finding that plaintiff had established a pri-ma facie case and was entitled to the procedural benefits of a presumption of bailee negligence. The bailee attempted to explain the cause of the damage and to show that it occurred without his fault, but we cannot say that the bailee’s account of the factual events exonerated him from negligence as a matter of law. It was for the factfinder to determine whether the nonexistence of facts pointing to negligence was as probable as their existence; if the facts were not exculpatory or not consistent with due care, the presumption of bailee negligence would persist and would justify a verdict for the plaintiff-bailor. Cf.
 
 Portland Flying,
 
 supra, 227 A.2d at 446. The skimpy evidence here produced by the bailee does not suffice to exonerate him from the presumption of negligence.
 
 [2]
 
 It was for the factfinder to assess the probative value of the bailee’s explanation of the loss. The District Court properly determined that the bailee was liable for negligence.
 

 Defendant further contends, however, that even if he negligently breached the duty of ordinary care owed to plaintiff as bailor, plaintiff had assumed the risk of damage to the bailed goods. Defendant bases this argument on those portions of the testimony where plaintiff relates his doubts about the soundness of the building where the boat was to be stored and the questions plaintiff addressed to defendant in order to elicit defendant’s assurance that the building was indeed sound. We cannot accept the view that plaintiff’s mere concern about possible danger should operate to bar him from recovery against defendant’s negligence. The record in the case before us repudiates any suggestion that plaintiff voluntarily consented to assume a known risk of damage to the bailed goods in the event the roof collapsed. Defendant’s contention that the facts found by the District Court support a defense of assumption of the risk is completely without merit.
 

 It remains only to determine the damages properly due the plaintiff. Plaintiff’s complaint avers damages of $650 to his boat and $200 to the “steering” cable, for a total ad damnum of $850. Plaintiff allows that various nautical appurtenances were severable from the boat after it was damaged, and that these rendered a salvage value of $50. The District Court found that the roof of defendant’s premises, in collapsing, had demolished plaintiff’s boat, motor, and trailer, and on this finding the District Court apparently based its award of the entirety of plaintiff’s requested damages of $800.
 

 The District Court erred in its finding as to damages. On several occasions plaintiff stated that he made no claim of damages pertaining to the trailer or mo
 
 *768
 
 tor with which his boat was stored. Plaintiff’s claim of damages extended only to the boat. The sole tangible evidence regarding the fair market value of the boat at the time of the accident is that of the plaintiff. He placed the value at $700. As owner, he could properly give his opinion as to the fair market value of his property. Nelson v. Leo’s Auto Sales, Inc., 158 Me. 368, 374, 185 A.2d 121, 124 (1962). Any objection to his testimony on that subject goes to the weight of the evidence, not to its admissibility. Kerr v. The Great Atlantic & Pacific Tea Company, 129 Me. 48, 51, 149 A. 618, 619-20 (1930). In like fashion, the attribution of some salvage value to the remnants of his vessel appears to be warranted by plaintiff’s description of the items he removed and saved. Even though plaintiff produced testimony that a major cable in the boat was cut when the roof collapsed, there is no basis in the record for valuation of the cable or for appraising the extent of the damage. Nor can it readily be assumed that the cable is personal property for which a value can be assigned over and above the value of the boat of which the cable was a working part. The boat had been independently valued at $700. Only the boat was destroyed, but it was destroyed in its entirety, excepting salvage value. Therefore, we conclude on the record before us that plaintiff’s maximum permissible damage is $650. Although neither party has moved for a new trial, we do not wish to preclude plaintiff from seeking to establish a new and better record with regard to damages. We do not set aside the judgment unconditionally, but instead proceed to the only reading of the record that we can rightfully achieve. Cf. DeBlois v. Dunkling, 145 Me. 197, 205, 74 A.2d 221, 225 (1950).
 

 The entry must be:
 

 If plaintiff remits all of the judgment in excess of $650.00 within 20 days of this opinion, the appeal is denied; otherwise the appeal is sustained and a new trial granted on damages only.
 

 All Justices concur.
 

 [1]
 

 . We have somewhat abridged the District Court’s conclusions of law in order that they might better conform tc the judgment of this Court.
 

 [2]
 

 . For an example of a detailed factual showing of reasonable precautions sufficient to exonerate a bailee in admiralty from liability tor storm damage to bailed goods, see Chanler v. Wayfarer Marine Corp., 302 F.Supp. 282 (D.Me.1969).