STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss.                                  CIVIL ACTION
                                                 DOCKET NO: CV-09-093

THEODORE W. HOCKING,

          Plaintiff,

v.
                                                 **ORDER**

PORT HARBOR MARINE, INC.,

          Defendant

Defendant Port Harbor Marine, Inc.'s partial motion for summary judgment on counts I, negligence, and II, breach of contract, is before the Court. Plaintiff Theodore W. Hocking has cross-motioned for partial summary judgment on count II. Port Harbor Marine has failed to prove that it has an adequate affirmative defense by law, and its motion is denied on both counts. Hocking's motion for summary judgment on count II is also denied because there remain disputes of material fact as to whether Port Harbor Marine negligently performed the parties' bailment contract.

## BACKGROUND

The parties stipulate the following facts pursuant to M.R. Civ. P. 56(h). Port Harbor Marine, Inc. (Defendant) is a business that sells, stores, and services boats. In the fall of 2007 Theodore Hocking (Plaintiff) arranged for Defendant to haul his 1972 Chris Craft Flybridge 33 powerboat out of Sebago Lake and into winter dry-storage. The actual hauling occurred in late October 2007. Defendant floated the boat onto a trailer fitted with hydraulically articulated arms designed

1

to secure the boat in place. Defendant then began to tow the boat and trailer out of the water via a ramp. At the top of the ramp one of the trailer's hydraulic arms failed, causing the boat to fall and suffer damage.

Plaintiff had signed a pre-printed "Boat Space Rental Agreement" before his boat was hauled out of the water and damaged. The Agreement states that it covers a period from November 1, 2007 to April 30, 2008. The form's backside contains terms and conditions, one of which states:

> [Plaintiff] agrees to have the watercraft covered by a full marine insurance package (hull coverage as well as indemnity and liability coverage). [Plaintiff] agrees to release and discharge [Defendant] from any and all responsibility or liability for injury (including death), loss, or damage to persons or property in connection with [Defendant's] docking facility or marina. This release and discharge shall cover without limitation any loss or damage resulting from [Defendant's] employees parking or hauling [Plaintiff's] boat . . . .

On February 12, 2009 Plaintiff filed his three-count complaint alleging negligence, breach of contract, and a third claim for an unrelated incident. The third claim has been settled and dismissed. On August 25, 2009 Defendant filed its motion for partial summary judgment on count I, negligence, and count II, breach of contract. Defendant argues that the quoted language from the Agreement is a valid insurance procurement and liability waiver clause that shields it from all liability on either count. Defendant alternatively argues that it strictly complied with all of the terms the contract and its failure to haul the boat without damage does not constitute a breach.

Plaintiff opposes Defendant's motion and brought his own cross-motion for summary judgment on count II, breach of contract. Plaintiff argues that the Agreement is inapplicable to the hauling that occurred before the named effective date of November 1, 2007, and that it is an invalid attempt to waive liability in any event. Plaintiff also argues that the hauling contract he had with

2

Defendant, whatever its basis, implicitly required Defendant to perform the job without damaging the boat. Plaintiff claims that Defendant's admitted failure to do so constitutes a breach of contract.

## DISCUSSION

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. The parties first dispute the construction and validity of their written Agreement. As the Agreement is unambiguous, the construction of its terms presents a question of law for the Court to decide. *Hopewell v. Langdon*, 537 A.2d 602, 604 (Me. 1988).

### 1.    The Agreement's Insurance Provision

The law disfavors contractual provisions that purport to excuse a party from liability for its own negligence and subjects such waivers to a heightened level of judicial scrutiny. *Hardy v. St. Clair*, 1999 ME 142, ¶ 3, 739 A.2d 368, 369 (quoting *Doyle v. Bowdoin College*, 403 A.2d 1206, 1207 (Me. 1979)). By contrast, insurance procurement clauses acting as "waivers of subrogation are encouraged by the law and serve important social goals: encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation and facilitating and preserving economic relations and activity." *Reliance Nat'l Indem. v. Knowles Indus. Serv. Corp.*, 2005 ME 29, ¶ 13, 868 A.2d 220, 225–26 (quoting *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 16, 756 A.2d 515, 520) (internal quotations omitted). The courts' receptivity to these different types of provisions charts the difference between "a party indemnifying another

3

for its own negligence" in the former, versus "parties allocating risk to insurers" in the latter. *Id.* at ¶ 15, 868 A.2d at 226 (citing *Acadia Ins. Co.*, 2000 ME 154, ¶ 18, 756 A.2d at 520).

The Agreement at issue in this case combines an insurance procurement clause with an absolute liability waiver under the heading "Insurance." The insurance procurement clause states: "[Plaintiff] agrees to have the watercraft covered by a full marine insurance package (hull coverage as well as indemnity and liability coverage)." The clause goes on to release Defendant from all liability that might arise in connection with Defendant's facility from any cause. To the extent that this is a waiver of subrogation in which the parties have "relieved[d] each other of liability to the extent each is covered by insurance," it is supported by public policy and enforceable. *Reliance Nat'l Indem.*, 2005 ME 29, ¶ 13, 868 A.2d 220, 225–26. Thus, Defendant may correctly argue that Plaintiff should first look to his insurer for indemnification, and seek to recover from the Defendant only after his insurance fails to make him whole. *See id.* at ¶ 15, 868 A.2d at 226 ("In cases involving waivers of subrogation . . . there is no risk that an injured party will be left uncompensated . . . .").

This is not, however, what Defendant argues. Defendant claims that the Agreement *completely* absolves it of liability for the damage to Plaintiff's boat. A contractual provision that releases a party from liability for its own negligence will only be upheld if it "expressly spell[s] out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Hardy v. St. Clair*, 1999 ME 142, ¶ 3, 739 A.2d 368, 369 (quoting *Doyle v. Bowdoin College*, 403 A.2d 1206, 1207 (Me. 1979)) (internal quotations omitted). In practice this has required the provision to expressly use the word "negligence." *See Lloyd v.*

4

*Sugarloaf Mountain Corp.*, 2003 ME 117, ¶ 8, 833 A.2d 1, 4; *Hardy*, 1999 ME 142, ¶¶ 4, 6, 739 A.2d 368, 369–70; *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993 (Me. 1983); *Doyle*, 403 A.2d at 1207–08.

The provision in the Agreement does not make any reference to liability arising from Defendant's negligence, but instead purports to "release and discharge [Defendant] from any and all responsibility or liability . . . ." While this over-broad language might inferentially include a release from negligence liability, the courts will not read such "words of general import . . . as expressing" the requisite intent necessary to effect a waiver. *Emery Waterhouse Co.*, 467 A.2d at 993 (citing *Freed v. Great Atlantic & Pacific Tea Co.*, 401 F.2d 266, 270 (6th Cir. 1968)). Furthermore, provisions exempting parties from liability for their own intentional or reckless conduct contravene public policy and are generally void. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 15, 868 A.2d 220, 226 (citing *Lloyd*, 2003 ME 117, ¶ 21, 833 A.2d 1, 7 (Calkins, J., dissenting)); Restatement (Second) of Contracts § 195(1) (1981). The provision is thus legally inoperative as a release and Defendant cannot argue that the Agreement absolves it of liability for damaging Plaintiff's boat.

2.    **Defendant's Motion for Summary Judgment**

Defendant has moved for summary judgment in its favor on both counts I and II on the basis of the Agreement's liability waiver. Plaintiff has opposed Defendant's motion solely by attacking the applicability and validity of that waiver. As discussed above, the Agreement does not shield Defendant from liability. Defendant's motion for summary judgment on counts I and II is therefore denied.

5

### 3. Plaintiff's Motion for Summary Judgment

Plaintiff argues that Defendant breached their hauling contract by damaging Plaintiff's boat. Defendant argues that it had no contractual duty to haul and store the boat without damaging the vessel. Because it did haul and store the boat, Defendant claims it fully performed its contractual obligations, notwithstanding the damage. Alternately, Defendant claims that Plaintiff has not shown that Defendant is at fault for the hydraulic-arm's failure, making summary judgment on count II inappropriate.

When Plaintiff gave his boat to Defendant for the purpose of hauling the boat from the water and storing it for the winter, they parties formed a bailment contract. A bailment is defined as:

> The delivery of personal property by one person to another in trust for a specific purpose, with a contract . . . that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

*Frost v. Chaplin Motor Co.*, 138 Me. 274, 277, 25 A.2d 225, 226 (1942) (quoting 6 Am. Jur. 141). Bailments have been recognized in situations such as where an automobile was given to a mechanic for lubrication service or, more relevant to the present case, where a boat was given to a barn's owner for winter storage. *Frost*, 138 Me. at 277, 25 A.2d at 226; *Levasseur v. Field*, 332 A.2d 765, 767 (Me. 1975). In this case Plaintiff delivered possession of his boat to Defendant so that Defendant could haul the boat from the water and store it through the winter, so that Plaintiff could retrieve it in the spring. "There is no doubt that [P]laintiff's delivery and [D]efendant's acceptance of personal property for temporary storage on [D]efendant's premises established a bailment." *Levasseur*, 332 A.2d at 767.

A bailee in Defendant's position "is not an insurer against the loss of [or damage to] the bailed goods." *Id.* (citing *Levesque v. Nanny*, 142 Me. 390, 392, 53 A.2d 703, 704 (1947)). However, bailment contracts must be performed observing a duty of ordinary care. 8A Am. Jur. 2d *Bailments* § 29 (2008); *see Levasseur*, 332 A.2d at 767. Negligent performance thus breaches the contract and exposes the bailee to liability. *See Levasseur*, 332 A.2d at 767; *Walters v. U.S. Garage, Inc.*, 131 Me. 222, 224, 227, 160 A. 758, 758, 760 (1932). "[A] showing of loss or damage [to] the bailed property[] gives rise to a presumption of bailee negligence." *Levasseur*, 332 A.2d at 767 (citing *Northeast Aviation Co. v. Rozzi*, 144 Me. 47, 48, 64 A.2d 26 (1949)).

Defendant admits that the boat was damaged during Defendant's performance of the Agreement, but denies fault. Plaintiff, in turn, has not produced any evidence on the record showing that Defendant breached its duty of care. The Court cannot find that Defendant breached the bailment contract through negligent performance as a matter of law, and Plaintiff's motion for summary judgment on count II is therefore denied.

## The entry is:

The parties' Boat Space Rental Agreement does not release Defendant from liability. Defendant's motion for summary judgment on counts I, negligence, and II, breach of contract, is **denied**. Plaintiff's motion for summary judgment on count II, breach of contract, is also denied.

DATE: December 3, 2009

_____
Roland A. Cole
Justice, Superior Court

7

12/04/2009    MAINE JUDICIAL INFORMATION SYSTEM    gmerritt
            CUMBERLAND COUNTY SUPERIOR COURT    mjxxi013
            PAGE A - ATTORNEY BY CASE VIEW

THEODORE W HOCKING VS PORT HARBOR MARINE INC
UTN:AOCSsr -2009-0016081        CASE #:PORSC-CV-2009-00093

SEL VD                     REPRESENTATION TYPE    DATE
01 0000000093 ATTORNEY:BASS, JOHN
ADDR:120 EXCHANGE ST, 6TH FLOOR PO BOX 447 PORTLAND ME 04112-0447
  F FOR:PORT HARBOR MARINE INC        DEF    RTND  04/06/2009

02 0000003871 ATTORNEY:WALSH, NICHOLAS H
ADDR:111 COMMERCIAL STREET PORTLAND ME 04101-4719
  F FOR:THEODORE W HOCKING          PL    RTND  02/12/2009

03 0000003391 ATTORNEY:WELTE, WILLIAM H
ADDR:13 WOOD STREET CAMDEN ME 04843-2036
  F FOR:PORT HARBOR MARINE INC        DEF    RTND  03/04/2009

Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.